No. 52,744

STATE OF KANSAS, *Appellant,* v. KATHLEEN FISHER, *Appellee.*

(631 P.2d 239)

Opinion filed July 17, 1981.

*Susan Ellmaker,* assistant district attorney, argued the cause, and *Dennis W. Moore,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for the appellant.

*Louis S. Wexler,* of Wexler, Wingfield & Zemites, of Shawnee Mission, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The State brings this appeal as a matter of right from an order of the Johnson District Court dismissing a complaint charging the defendant, Kathleen Fisher, with endangering a child, K.S.A. 21-3608(1)(*b*), and holding that statute unconstitutionally vague. We reverse.

The statute reads:

"**21-3608. Endangering a child.** (1) Endangering a child is willfully:

"(*a*) Causing or permitting a child under the age of eighteen (18) years to suffer unjustifiable physical pain or mental distress; or

"(*b*) Unreasonably causing or permitting a child under the age of eighteen (18) years to be placed in a situation in which its life, body or health may be injured or endangered."

We held subsection (*a*) unconstitutional in *State v. Meinert,* 225 Kan. 816, 594 P.2d 232 (1979), finding the words "unjustifiable physical pain or mental distress" undefined in the statutes and too vague to pass constitutional muster. We noted that the title of the statute was "endangering a child" and that in *State v. Kirby,* 222 Kan. 1, 563 P.2d 408 (1977), we found the language "endangering of life" without further statutory definition too indefinite to pass the vagueness test applicable to criminal statutes. We said at p. 4:

"The test [for vagueness] . . . is whether its language conveys a sufficiently

definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a common-sense determination of fundamental fairness."

We now turn to subsection (*b*) of the statute. It defines "endangering a child" as "*[u]nreasonably* causing or permitting a child . . . to be placed in a situation in which its life, body or health *may* be injured or endangered." (Emphasis supplied.)

The action forbidden must be *unreasonably* done—it must not be *reasonable.* "Reasonable" and "unreasonable" are words of common usage, readily understood. Reasonableness is used as a standard of conduct throughout our statutes and our jury instructions.

Driving a vehicle at speeds greater than is reasonable is a misdemeanor. See K.S.A. 8-1335, -1557, and L. 1913, ch. 65, § 7. The reasonableness of the belief of the accused is an essential element in the defenses of compulsion, K.S.A. 21-3209, self-defense, K.S.A. 21-3211, -3214, and defense of property, K.S.A. 21-3212, -3213, -3214. A law enforcement officer is authorized to use such force as "he reasonably believes to be necessary" in making an arrest. K.S.A. 21-3215. Disorderly conduct is defined in our statute as "engaging in noisy conduct tending reasonably to arouse . . . anger . . . in others." K.S.A. 21-4101(*c*). Similar statutes of other states prohibiting unreasonable noise as disorderly conduct have been upheld when challenged as unconstitutionally vague. See *People v. Fitzgerald,* 194 Colo. 415, 573 P.2d 100 (1978); *State v. McDermott,* 135 Vt. 47, 373 A.2d 510 (1977).

Vehicular homicide is the killing of a human being by the operation of a vehicle "in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances." K.S.A. 21-3405. We upheld that statute in the face of a charge that it was unconstitutionally vague and indefinite in *State v. Randol,* 226 Kan. 347, 351, 597 P.2d 672 (1979). Justice Holmes, speaking for a unanimous court, said:

"It is true that no hard and fast rule can be stated that would set an obvious

standard of conduct in every factual situation. No such standard is required. The fact that the prescribed standard of conduct in a criminal statute may be one of varying degree dependent upon the factual circumstances in each case does not make a criminal law unconstitutional. As Mr. Justice Holmes of the United States Supreme Court said in *Nash v. United States,* 229 U.S. 373, 57 L.Ed. 1232, 33 S.Ct. 780 (1913):

" '[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. "An act causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it" by common experience in the circumstances known to the actor. . . . "The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct." ' "

We conclude that "unreasonably," as that word is used in K.S.A. 21-3608(1)(*b*), is the doing or the omitting of some action contrary to reason, the doing of or omitting to do something that the average person, possessing ordinary mental faculties, would not have done or would not have omitted doing under all of the attendant and known circumstances.

Next we turn to the word "may." In ordinary usage it is permissive; it connotes a possibility, however remote; it means to be in some—perhaps small—degree likely, or to stand a chance of occurring. We have narrowly construed the word, as used in some statutes, and have held it to be mandatory and to mean "must," where that construction was necessary to reflect the intention of the legislature. See *Johnson v. Connelly,* 88 Kan. 861, 129 Pac. 1192 (1913); *National Bank v. City of St. John,* 117 Kan. 339, 230 Pac. 1038 (1924). In other instances we have given the word a broad and permissive construction. See *In re McCort, Petitioner,* 52 Kan. 18, 34 Pac. 456 (1893); and *Foster v. Harper County Comm'rs,* 143 Kan. 361, 55 P.2d 349 (1936). Other jurisdictions have given the word restrictive construction where necessary and appropriate. The Fifth Circuit Court of Appeals, in *International Air Ind., Inc. v. American Excelsior Co.,* 517 F.2d 714, 728 (5th Cir. 1975), *cert. denied* 424 U.S. 943 (1976), approved a trial court instruction that the phrase "may be substantially to lessen competition," as used in the Robinson-Patman Act, means "a reasonable probability or possibility, not imaginary or elusive, of lessening competition . . . ."

The Colorado Supreme Court, in *People v. Hoehl,* 193 Colo. 557, 568 P.2d 484 (1977), upheld a section very similar to the

Kansas statute when it was challenged on constitutional grounds. The Colorado statute read:

"(1) A person commits child abuse if he knowingly, intentionally, or negligently, and without justifiable excuse, causes or permits a child to be:
"(a) Placed in a situation that *may* endanger the child's life or health . . . ."
Colo. Rev. Stat. § 18-6-401 (1)(a) (1973). (Emphasis supplied.)

The court cited a rule for situations in which a statute may be interpreted in several ways, one of which is constitutional, concluding that in those situations the constitutional interpretation should be adopted. The court discussed the statutory language, including the construction to be placed on the word "may," as follows:

"Normally, 'may' means 'be in some degree likely,' *Merriam-Webster's New International Dictionary* (Third Edition) p. 1396, 'expressing ability, competency, liberty, permission, possibility, probability or contingency.' Black's Law Dictionary 1131 (4th rev. ed. 1968). See *Greyhound Corp. v. Excess Insurance Co.*, 233 F.2d 630 (5th Cir. 1956); *Grant v. Utah State Land Board*, 26 Utah 2d 100, 485 P.2d 1035. So construed, we seriously doubt whether 'may' in a criminal statute provides a fair description of the prohibited conduct, since virtually any conduct directed toward a child has the possibility, however slim, of endangering the child's life or health. *People v. Gonzales, supra.* [188 Colo. 272, 534 P.2d 626 (1975)]. *See State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (N.M. Ct. App. 1975); *State v. Llopis,* 257 So. 2d 17 (Fla. 1971).

"We have not, however, hesitated to construe 'may' as importing a greater degree of certainty, where necessary. *Duprey v. Anderson,* 184 Colo. 70, 518 P.2d 807 ('may' interpreted as 'shall' in statute); *Carleno Sales v. Ramsay Co.,* 129 Colo. 393, 270 P.2d 755 (interpreted as 'shall' in contract.) Other courts have similarly found it necessary to depart from the everyday understanding of 'may' in construing statutes, *International Air Industries, Inc. v. American Excelsior Co.,* 517 F.2d 714 (5th Cir. 1975), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (interpreted as 'reasonable possibility'); *Federal Trade Commission v. Charles N. Miller Co.,* 97 F.2d 563 (1st Cir. 1938) (construed as 'are designed to'), and contracts; *Greyhound Corp. v. Excess Insurance Co., supra* (construed as 'frequently and regularly').

"We construe the word 'may' in section 18-6-401 (1)(a) to mean that there is a reasonable probability that the child's life or health will be endangered from the situation in which the child is placed. . . . This is a particularly appropriate standard where the protection of children is the statutory purpose." pp. 560-561.

We agree with the rationale of the Colorado Supreme Court, and we hold that the word "may" as used in K.S.A. 21-3608(1)(*b*) means something more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result.

Many states have statutes similar to K.S.A. 21-3608(1)(*b*), and

many courts have upheld such statutes. We cite just a few of such cases.

The California Court of Appeals, in an often cited opinion, *People v. Beaugez,* 232 Cal. App. 2d 650, 43 Cal Rptr. 28 (1965), upheld a statute very similar to K.S.A. 21-3608(1)(*b*) upon a vagueness challenge. Section 273a of the California Penal Code (in effect at that time) provided:

"[W]hoever, having the care or custody of any child, causes or permits the life or limb of such child to be endangered, or the health of such child to be injured, and any person who willfully causes or permits such child to be placed in such situation that its life or limb may be endangered, or its health likely to be injured, is punishable by  . . . ."

The court construed the section and considered the type of conduct which the statute sought to reach; it said at 656-658:

"The type of conduct which this portion of the statute seeks to reach defies precise definition. In number and kind the situations where a child's life or health may be imperiled are infinite. Yet the aim of the statute is not obscure and its objective is a salutary social one. It seeks to protect children from wilful mistreatment whether directly or indirectly applied. The portion of the statute which we construe relates to indirect mistreatment. Frequently it is the only sort of child abuse that can be proved. Unhappily it is a matter of common knowledge that badly mistreated children are received as county hospital patients daily. Because, in most cases, abuse occurs in the privacy of the home, proof of the actor directly responsible is, more often than not, impossible. If children are to be protected against such mistreatment, responsibility must be fixed upon those indirectly responsible—those who wilfully permit situations to exist which imperil children. Although the language of the statute is broad and the prohibited behavior is very general, this seems *necessary* in the nature of its subject matter. In *People v. Yates,* 114 Cal. App. Supp. 782 [298 P. 961], the court considered a similar complaint against a former version of Penal Code section 270, which penalized the father of a child 'who wilfully omits without lawful excuse to furnish necessary food, clothing, shelter or medical attention,' etc. Against the contention that the statute was void for vagueness, the court said on page 789: 'In the nature of things no specific and precise rule can be made on the subject [i.e., of that which is "necessary"].'

"By giving the word 'wilful' its accepted statutory meaning and by applying the 'rule of reason' to the provision as a whole, we think sufficient clarity emerges to 'provide a standard of conduct' to guide the guardian of the child against commission of the offense and to guide the trier of fact in determining guilt. As stated in the comment in 41 California Law Review 523, 525, regarding the 'rule of reason' or 'reasonable man test,' 'This type of inquiry has been the rationale for upholding many statutes which by their very nature and subject matter could not be more clear.' (Citing *People v. Yates, supra.*)

"First we consider the meaning of the word 'willful.' By dictionary definition 'willful' can either mean at one extreme 'governed by will without yielding to

reason or without regard to reason: obstinately or perversely self-willed,' or it can be used synonymously with 'intentional' or 'voluntary.' (Webster's Third New International Dictionary, Unabridged.)

"Penal Code section 7, subdivision 1, defines 'willfully' *'unless otherwise apparent from the context* . . . when applied to the intent with which an act is done . . . [as implying] simply a purpose or willingness to commit the act . . . . It does not require any intent to violate law, or to injure anyone . . . .' [Emphasis in original.] *(See People v. Hicks,* 222 Cal. App. 2d 265 [35 Cal. Rptr. 149].)

"Within that definition (which was the definition given to 'willful' by the trial court here in its instructions to the jury), and since another meaning is not 'otherwise apparent from the context,' we construe 'willfully' as used in Penal Code section 273a to mean 'purposeful' or 'with knowledge of consequences.' And by applying the 'rule of reason' to the whole provision we construe its meaning as a whole to condemn the intentional placing of a child, or permitting him to be placed, in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable. This is the construction of intent which the context of the statute as a whole justifies, and so construed we find it not void for vagueness.

"Appellants urge that under the wording of the statute a parent might be prosecuted for permitting a child to go swimming or for sending him on an errand along traveled streets to a grocery store. But such conduct (assuming it to be applied as regards a child of suitable years to run errands or go swimming) would not justify prosecution under a common sense interpretation of the statute. In *People v. Buese,* 220 Cal. App. 2d 802, we stated at page 806 [34 Cal. Rptr. 102]: '[C]ourts will not give strained meanings to legislative language, torturing that which is clear (or can be made clear by common-sense interpretation) into opacity through a process of imaginative hypothesizing.' "

The New Mexico Court of Appeals upheld that state's child abuse statute in *State v. Coe,* 92 N.M. 320, 587 P.2d 973 (Ct. App.), *cert. denied* 92 N.M. 353, 588 P.2d 554 (1978), saying:

"Section 40A-6-1(C), *supra,* is not vague. It clearly sets forth and segregates the type of conduct proscribed by the law. It contains specific sections on neglect, abandonment, and abuse. Each section contains its own definition. Section 40A-6-1(C), *supra,* defines *abuse* as conduct which:

" ' . . . consists of a person knowingly, intentionally, or *negligently,* and without justifiable cause, causing or permitting a child to be:

" '(1) placed in a situation that may endanger the child's life or health; or

" '(2) tortured, cruelly confined or cruelly punished; or

" '(3) exposed to the inclemency of the weather.

" 'Whoever commits abuse of a child is guilty of a fourth degree felony, unless the abuse results in the child's death or great bodily harm, in which case he is guilty of a second degree felony.' " [Emphasis added.]

"Reasonable adults of common intelligence would have no difficulty in ascertaining the type of conduct proscribed by the statute and the type not so restricted. Defendant's contention, that because of its negligence requirement the statute covers any and all harm that might befall the child, is without substance. *State v.*

*Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct. App. 1975), held that § 40A-6-1, *supra,* to be a strict liability statute. *State v. Adams,* 89 N.M. 737, 557 P.2d 586 (Ct. App. 1976) sustained a conviction of child abuse resulting in death upon a negligence theory where the father had knowledge of the child abuse and failed to take any action to halt that abuse.

"The statute then does not apply to ordinary situations where a child is injured, but only to those where the parent performs or fails to perform some abusive act. The statute requires *abuse* and not mere normal parental action or inaction. The statute gives fair warning to any reasonable person that child abuse is prohibited and punishable behavior." p. 321.

The Supreme Court of Pennsylvania considered a vagueness challenge to a Pennsylvania child welfare statute in *Commonwealth v. Mack,* 467 Pa. 613, 359 A.2d 770 (1976). Justice Roberts authored the court's opinion. He said:

"This case presents the narrow issue whether 18 Pa. C.S.A. § 4304 (1973), 'Endangering the welfare of children,' is unconstitutionally vague. . . .

"The statute provides:

" 'A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the second degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.'

It was taken, with two insignificant changes, directly from the Model Penal Code of the American Law Institute. The Pennsylvania Joint State Government Commission, in its comments on the section, stated:

" 'This section consolidates and simplifies the various provisions concerning crimes endangering the welfare of children. The offense involves the endangering of the physical or moral welfare of a child by an act or omission in violation of legal duty even though such legal duty does not itself carry a criminal sanction.'

. . . .

"It must be borne in mind that we are dealing with a juvenile statute.

" '[T]he purpose of juvenile statutes, as the one at issue here, is basically protective in nature. Consequently these statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be circumscribed, these statutes are necessarily drawn broadly. It clearly would be impossible to enumerate every particular type of adult conduct against which society wants its children protected. We have therefore sanctioned statutes pertaining to juveniles which proscribe conduct producing or tending to produce a *certain defined result* . . . rather than itemizing *every undesirable type of conduct.*'

. . . .

"*Commonwealth v. Marlin,* 452 Pa. 380, 386-87, 305 A.2d 14, 18 (1973) (emphasis in original).

"Thus, statutes such as the one at issue here are to be given meaning by reference to the 'common sense of the community' and the broad protective purposes for which they are enacted. With these two factors in mind, we believe

that section 4304 is not facially vague. Phrases such as 'endangers the welfare of the child' and 'duty of care, protection or support' are not esoteric. Rather, they are easily understood and given content by the community at large. An individual who contemplates a particular course of conduct will have little difficulty deciding whether his intended act 'endangers the welfare of the child' by his violation of a 'duty of care, protection or support.' " pp. 615-18.

See also *People v. Ewing,* 72 Cal. App. 3d 714, 140 Cal. Rptr. 299 (1977), *People v. Peabody,* 46 Cal. App. 3d 43, 119 Cal. Rptr. 780 (1975), *People v. Vandiver,* 51 Ill. 2d 525, 283 N.E.2d 681 (1971), and *People v. Bergerson,* 17 N.Y.2d 398, 271 N.Y.S.2d 236, 218 N.E.2d 288 (1966).

The predecessor of our present statute was K.S.A. 1967 Supp. 38-713, which made it a misdemeanor for any person to wilfully cause or permit any child under the age of 16 years "to be placed in such a situation that its life or limb may be endangered or its health likely to be injured." It was originally enacted as a part of Chapter 277 of the Laws of 1965, entitled CRIMES AFFECTING CHILDREN. It remained a part of the juvenile code until 1969 when the section was reworded and made a part of the Kansas Criminal Code. L. 1969, ch. 180, § 21-3608.

The purpose of K.S.A. 21-3608(1)(*b*) is salutary. It is to protect children, and to prevent their being placed where it is reasonably certain that injury will result. While the facts in this case have not been established, the State contends that Kathleen Fisher left her infant daughter, Sabrina, in the care of Robert Fisher, knowing that Robert had subjected Sabrina to violent physical abuse twice previously, and knowing that he had similarly abused and assaulted his own children and the children of his second wife. Wilfully leaving a tiny child with a person, knowing that he has previously and repeatedly beaten and otherwise abused the child and other children, is without question unreasonable; it obviously places the child "in a situation in which its life, body or health may be injured or endangered," and in which injury appears likely and probable. Whether upon trial the State can establish to a jury's satisfaction the facts it alleges are true, we do not know.

The wording of the statute is broad, but the purpose is likewise broad; to prevent people from placing children in situations where their lives and bodies are obviously in imminent peril. The phrase "or endangered" adds little, if anything to the statute; if a child is endangered, it may be injured; it is the likelihood of

injury against which the statute speaks. We conclude that K.S.A. 21-3608 (1)(*b*) is clear and understandable; that ordinary persons can determine what conduct is proscribed by a common-sense reading of the statute; that the statute conveys a sufficiently definite warning when measured by common understanding; and that it is not void for vagueness.

The judgment is reversed, and the case is remanded for further proceedings.