NOT DESIGNATED FOR PUBLICATION

No. 113,521

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DENZEL STORMS,
*Appellant.*


MEMORANDUM OPINION


Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed February 26, 2016. Affirmed.


*Timothy J. Grillot*, of Parsons, for appellant.


*Stephen P. Jones*, deputy county attorney, *Hillary McKinney*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., LEBEN and POWELL, JJ.


LEBEN, J.: Deputy Casey Keele clocked Denzel Storms driving 102 miles per hour in a 65-mile-per-hour zone. Keele activated his lights and sirens and began to pursue him, but Storms turned off the paved road at his first opportunity. Keele followed Storms on gravel roads, called for assistance, and caught up to Storms after another officer set up a roadblock. Because Storms had tried to evade being pulled over, Keele and the other officer pointed their guns at Storms until he complied with all their requests. Neither officer knew until later that Storms' infant daughter had been in the backseat, directly in their line of fire.

A jury convicted Storms of aggravated child endangerment. Storms contended before, during, and after trial that the statute for that crime was unconstitutionally vague, and he raises the same argument on appeal. But as numerous Kansas cases have held, the statute is not unconstitutionally vague—a person using common sense can understand that engaging in a high-speed chase with police while an infant is in the car is one kind of behavior that the statute prohibits.

FACTUAL AND PROCEDURAL BACKGROUND

The key facts of this case are not in dispute. On October 1, 2013, Keele was on a routine patrol when he clocked the speed of Storms' car at 102 miles per hour in a 65-mile-per-hour zone. Keele activated his lights and siren, turned his vehicle around, and began pursuing Storms. At trial, Storms acknowledged that he had been speeding and that it was "insane" to drive 102 miles per hour. Storms testified that he had been speeding because he had been late for a doctor's appointment for his daughter, who had had a fever and had been in the backseat of his car.

Storms took the first turn off the paved highway onto a gravel road. Keele pursued Storms through numerous turns on gravel roads and called for assistance. Storms testified that he had been driving between 50 and 60 miles per hour on the gravel roads. Keele testified that he had been driving between 75 and 80 miles per hour, trying to catch up with Storms. Keele said that he had not clocked Storms' car on the gravel road because he had been focused on driving and catching up.

Detective Kevin Lahey was nearby when Keele called for assistance, so he set up a roadblock to stop Storms. Storms stopped at the roadblock and complied with all of the officers' directions after that. One or two minutes after Storms stopped, Keele caught up. The entire chase covered 4 or 5 miles and took around 5 minutes.

2

Keele and Lahey conducted a "high-risk" or felony traffic stop, which meant that they both pointed their weapons at Storms. Keele testified that doing a felony traffic stop is standard police practice when a person tries to avoid being pulled over. Both officers testified that they had aimed their weapons at Storms' center of mass while Storms was still in the driver's seat. Neither officer was aware that there was an infant in the backseat of Storms' car, behind the driver's seat.

Storms was charged with and found guilty of aggravated child endangerment, attempting to elude a police officer, and speeding. Storms also pled no contest to misdemeanor marijuana possession. The district court placed Storms on probation for 12 months with an underlying sentence of 6 months in jail (to be served if he didn't successfully complete the probation).

Before trial, Storms had filed a motion to dismiss his case, arguing that the aggravated-child-endangerment statute was unconstitutionally vague. Storms renewed this argument at trial and in his motion for a new trial. The district court rejected Storms' argument each time.

Storms has appealed to this court.

ANALYSIS

*The Aggravated-Child-Endangerment Statute, K.S.A. 2015 Supp. 21-5601(b)(1), Is Not Unconstitutionally Vague.*

Storms argues on appeal, as he did in the district court, that the aggravated-child-endangerment statute is unconstitutionally vague. Whether a statute is constitutional is a question of law, so we must answer that question without any required deference to the district court. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009). When

3

considering this question, a court presumes that the statute is constitutional and must interpret it in a way that makes it constitutional if there is any reasonable way to do so. 289 Kan. at 735.

Whether a criminal statute is unconstitutionally vague depends on whether it sufficiently conveys what kind of conduct it prohibits. *Dissmeyer v. State*, 292 Kan. 37, 39, 249 P.3d 444 (2011). If people of common intelligence must guess at a statute's meaning, then that statute violates due process and is void for vagueness. 292 Kan. at 39. A law is also vague if it delegates the basic question of what kind of conduct is criminal to police, judges, and juries, creating a risk of arbitrary and discriminatory application. *State v. Rupnick*, 280 Kan. 720, 737, 125 P.3d 541 (2005). Both criteria are concerned with fundamental fairness: Are the words in the statute clear enough for people using common sense to understand what they mean? See *State v. Richardson*, 289 Kan. 118, 124, 209 P.3d 696 (2009).

Storms argues that the aggravated-child-endangerment statute is vague because it is too confusing when compared with regular, nonaggravated child endangerment. Aggravated child endangerment is "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." K.S.A. 2015 Supp. 21-5601(b)(1). Regular child endangerment is "knowingly and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be endangered." K.S.A. 2015 Supp. 21-5601(a). These offenses differ in two key ways. First, aggravated child endangerment requires that a child "is endangered," while regular child endangerment requires only that a child "may be endangered." Second, the aggravated offense requires that a defendant act "recklessly," while the regular offense requires that a defendant act "knowingly and unreasonably." Compare K.S.A. 2015 Supp. 21-5601(a) with K.S.A. 2015 Supp. 21-5601(b)(1). Storms argues that these differences make it impossible for a reasonable person to tell the difference between the offenses.

4

The Kansas Supreme Court has previously considered the meaning of the word "may" in the regular child-endangerment statute. *State v. Cummings*, 297 Kan. 716, 722-31, 305 P.3d 556 (2013); *State v. Fisher*, 230 Kan. 192, 194-95, 631 P.2d 239 (1981); see also *State v. Sharp*, 28 Kan. App. 2d 128, 130-35, 13 P.3d 29 (2000). The phrase "may be endangered" is challenging because it isn't clear how likely the potential danger must be for a person to be guilty of endangering a child. *Cummings*, 297 Kan. at 727-29. This phrase is particularly troubling in cases in which a child has been gravely harmed but the likelihood of that harm occurring was very remote. 297 Kan. at 726-27. These situations can cause hindsight bias—jurors may think that because a bad thing happened, it must have been likely to happen. 297 Kan. at 726-27.

The *Fischer* court began its analysis by noting that in ordinary usage "may" means "a possibility, however remote." 230 Kan. at 194. But in the context of the statute, the court narrowed the definition to "something more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result." 230 Kan. at 195. But even "reasonable probability" didn't go far enough in describing the meaning of "may be endangered"—the *Cummings* court held that the phrase created "an ambiguity for the jury as to the level of risk that constitutes criminal conduct." 297 Kan. at 729. The court went on to specify that the jury instructions for child endangerment should direct the jurors to consider the gravity of the threatened harm, the legislature's assessment that the conduct is inherently dangerous, and the likelihood that harm to the child will result or that the child will be placed in immediate danger. 297 Kan. at 731. The court also defined "likelihood" as "more than a faint or remote possibility." 297 Kan. at 731.

The phrase "is endangered," on the other hand, is more straightforward because it doesn't include the uncertainty created by the word "may." See *State v. Hansford*, No. 109,105, 2014 WL 1707455, at *4 (Kan. App. 2014) (unpublished opinion) (noting that

the aggravated offense is clearer and easier to understand than the misdemeanor offense because it lacks subjective words like "reasonable" and "may"), *rev. denied* 301 Kan. ___ (February 19, 2015). To be guilty of aggravated child endangerment, a person must have placed a child somewhere he or she is *actually* endangered, not just somewhere the child *might* be endangered. See *State v. Fabre*, No. 100,081, 2009 WL 1911696, at *7 (Kan. App. 2009) (unpublished opinion) (noting that because courts assume the legislature doesn't intend to enact meaningless legislation, the word "endangered" in the aggravated offense must require "a more real or actual threat" than in the regular offense), *rev. denied* 290 Kan. 1098 (2010).

While the line between "may be endangered" and "is endangered" might not be completely distinct, there is a line. *Cf. State v. Bonderson*, No. 90,549, 2004 WL 2977466, at *4 (Kan. App. 2004) (unpublished opinion) (noting, in a sufficiency-of-the-evidence challenge, that making methamphetamine in a garage created a likelihood of danger that turned into actual danger when the garage caught on fire while the children were in the house), *rev. denied* 279 Kan. 1008 (2005). A person of normal intelligence can grasp the difference between a child that "may be endangered" and a child that "is endangered."

The State makes this point in its brief, distinguishing between the danger created by speeding and the danger created by trying to evade police officers. Storms' decision to drive 102 miles per hour in a 65-mile-per-hour zone was a knowing and unreasonable choice that put his daughter in a position in which she may have been endangered—Storms himself admitted it was "insane" to drive that fast. But the record contains no suggestion that Storms came close to causing a car accident, so the danger created by speeding remained only a possibility rather than becoming a reality. (The State doesn't argue, at least in this case, that merely driving 102 miles per hour with the child in the car constitutes aggravated child endangerment.) On the other hand, Storms' decision to elude police officers led to those officers, who didn't know there was a child in the car, pointing

6

their guns at him and, by extension, at his daughter. The court instructed the jury in this case on both aggravated child endangerment and regular child endangerment, and the jury was capable of determining whether Storms' daughter was actually endangered or was merely in a position where she may have been endangered when the officers pointed their guns at Storms. Storms hasn't challenged the sufficiency of the evidence or the jury instructions in this appeal—his argument is limited to the constitutionality of the statute. But people of normal intelligence are capable of distinguishing between potential danger and actual danger, and the different standards in these two statutes don't make the aggravated statute unconstitutionally vague.

Storms also argues that the aggravated-child-endangerment statute is unconstitutionally vague because it requires a less culpable state of mind than regular child endangerment—that is, the more serious crime requires less conscious thought than the less serious crime. Kansas criminal law separates culpable states of mind into three categories: intentional, knowing, and reckless (listed from most serious to least). K.S.A. 2015 Supp. 21-5202(b). So generally, doing something "recklessly" involves a less culpable state of mind than "knowingly." See K.S.A. 2015 Supp. 21-5202(c). And Storms is correct that the more serious crime here, aggravated child endangerment, requires a less culpable state of mind than the less serious crime of regular child endangerment. See K.S.A. 2015 Supp. 21-5601(a), (b). But what Storms misses is that the legislature, in drafting these two offenses, balanced the culpable state of mind with the level of endangerment: aggravated child endangerment requires a lower level of culpability along with actual endangerment, while regular child endangerment requires a higher level of culpability and only a likelihood of endangerment. This is a rational and understandable separation between the two crimes: Because child-endangerment statutes are aimed at protecting children, it makes sense that the more serious crime is based more on the level of danger the child is in and less on the defendant's state of mind. See *Fisher*, 230 Kan. at 199.

Additionally, the misdemeanor statute doesn't require only actions performed "knowingly"—a person guilty of misdemeanor child endangerment must act both knowingly *and* unreasonably. K.S.A. 2015 Supp. 21-5601(a); see *State v. Wilson*, 267 Kan. 550, 556-58, 987 P.2d 1060 (1999). This is why parents aren't guilty of child endangerment for allowing their child to play football—the child may be endangered, but the parents' action wasn't unreasonable. 267 Kan. at 557. So while the misdemeanor statute at first glance requires a higher level of culpability than the felony statute, the reasonableness element changes the traditional meaning of "knowingly."

In sum, the aggravated-child-endangerment statute is not unconstitutionally vague. Storms behaved recklessly when he tried to get away from the police officer pulling him over for speeding. See K.S.A. 2015 Supp. 21-5202(j) (defining recklessness as the conscious disregard of a substantial and unjustifiable risk of a particular result that constitutes a gross deviation from the standard of care that a reasonable person would use in the situation). His daughter was endangered by his reckless action when the officers pointed their guns at him. A person of ordinary intelligence would reasonably understand that trying to evade police officers by speeding away with an infant in the car violates the aggravated-child-endangerment statute. See *State v. Martin*, No. 110,556, 2015 WL 5224697, at *7-8 (Kan. App. 2015) (unpublished opinion) (driving drunk with an 18-month-old child in the car obviously violates the statute), *petition for rev. filed* September 28, 2015; *State v. Thomas*, No. 110,571, 2015 WL 569371, at *25-27 (Kan. App. 2015) (unpublished opinion) (committing armed robbery when there's a child in the house obviously violates the statute), *rev. denied* 302 Kan. ___ (September 25, 2015); *State v. Martinez*, No. 108,441, 2014 WL 3731888, at *5-6 (Kan. App. 2014) (unpublished opinion) (pointing a loaded gun at a child during a robbery obviously violates the statute), *rev. denied* 302 Kan. ___ (July 21, 2015).

We therefore affirm the district court's judgment.