NOT DESIGNATED FOR PUBLICATION

No. 119,069

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TAYANA ANDREA KEMP,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed March 1, 2019.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Tayana Andrea Kemp appeals from her convictions at a bench trial on stipulated facts following her violation of a diversion agreement, claiming the evidence was insufficient to convict her. Finding no error, we affirm Kemp's convictions.

FACTS

On the evening of February 15, 2016, Topeka police were dispatched to Kemp's home on a report of a domestic dispute. Upon arriving, Kemp's husband, Patrick, informed the officers that he and Kemp got into an argument earlier that evening. Kemp

1

escalated the argument to violence and burned Patrick on the arm with a hot iron. She then threw a number of objects at Patrick, most of which missed him, damaging the wall behind him instead. One of the objects that Kemp threw, a desktop speaker, struck their 14-month-old son in the head when he wandered into the room during the argument. Finally, Kemp grabbed a kitchen knife and stabbed it into the kitchen wall. This action prompted Patrick to briefly restrain Kemp before releasing her so that he could go outside and call the police.

Based on the incident, Kemp was charged with one count of aggravated battery, a severity level 7 person felony; one count of endangering a child, a class A misdemeanor; and one count of criminal damage to property, a class B misdemeanor. She applied for and was granted diversion by the State. Under the terms of the written diversion agreement, the State promised to defer the prosecution of Kemp's case for 24 months, provided that Kemp was able to abide by a number of conditions. Among those provisions were conditions prohibiting Kemp from violating any federal, state, or local law and also requiring her to pay all fines and legal fees in a timely manner. The agreement also required Kemp to waive her constitutional rights and to stipulate that the facts contained in the affidavit as well as in all law enforcement reports were true and admissible as evidence. Finally, Kemp agreed that if she violated the terms or conditions of the agreement, it would be revoked and the case would immediately proceed to trial based solely on the stipulated facts and the police reports. If Kemp was able to abide by the terms and conditions of the agreement for the entirety of the 24-month deferred prosecution period, the State agreed to dismiss the offenses charged with prejudice.

Kemp signed the agreement on December 16, 2016, at which time she certified that she had "not been ticketed or arrested on any other charge between the date [she] completed the Application for Diversion and today's date, and that if [she had], it shall be grounds to refuse diversion, or if discovered later, grounds to revoke the Agreement."

2

The State did not sign the agreement until January 10, 2017, and it was finally filed with the district court on January 11, 2017.

On either January 1, 2017, or January 2, 2017, Kemp was involved in another domestic violence incident with Patrick. Based on that second incident, Kemp was charged with domestic battery on February 3, 2017. She was subsequently found guilty of domestic battery on the new charge on October 12, 2017. In addition, Kemp missed a fee payment under her diversion agreement in August 2017.

Based on Kemp's missed payment the State filed a motion to revoke diversion on September 13, 2017. The State later amended that motion to include Kemp's October 12, 2017 conviction for domestic battery, first offense. A hearing was held on November 21, 2017, during which the district court granted the State's amended motion to revoke Kemp's diversion. Pursuant to the agreement, Kemp's case proceeded immediately to trial on the stipulated facts and police reports. Those facts included the original arrest affidavit which the State admitted into evidence and also read into the record:

> "February 15, [2016], Topeka police officer was dispatched to [address omitted] in reference to a domestic dispute. Upon arrival, the reporting officer met with Patrick Kemp, who had a date of birth of March 7th, 1980. He stated that his wife, Tayana Kemp, who is the defendant in this case, had become violent during an argument, and burned him on the arm with a hot iron. She also threw several items at him while he was on the couch, which damaged the wall to an amount less than $1000. While she was throwing items, her 14-month-old son, [name omitted], walked into the room, and she accidentally struck him in the head with a desk-top speaker.
>
> "Ms. Kemp then grabbed a kitchen knife and stabbed it into a wall in anger. This is when Mr. Kemp stated that he had to restrain her. He then let her go and went outside to call 911. Mr. Kemp and Ms. Kemp were in a domestic relationship. They were currently married and had a child in common together.
>
> "All of these events happened in Shawnee County, Kansas."

On the basis of those stipulated facts and the police reports, the district court convicted Kemp of all three counts and sentenced her to 24 months' probation with an underlying sentence of 13 months in prison. Kemp now appeals those convictions.

ANALYSIS

Kemp contends that the district court lacked sufficient evidence in the stipulated facts and police reports included in the diversion agreement to convict her of the three charges in the criminal complaint.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases, where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt, that a guilty verdict will be reversed. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). In addition, a verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). Indeed, even the most serious offenses can be based entirely on circumstantial evidence. 304 Kan. at 25; but see *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009) ("'[T]he circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.'").

*Aggravated battery*

Kemp first argues that there was insufficient evidence to prove beyond a reasonable doubt that she was guilty of aggravated battery. To make a prima facie case of aggravated battery under the complaint filed in the case, the State was required to show that Kemp: (1) knowingly caused physical contact with another person and (2) the contact was made "in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2017 Supp. 21-5413(b)(1)(C).

Kemp contends that there was insufficient evidence to prove beyond a reasonable doubt that she acted knowingly. Specifically, Kemp argues that "we know nothing about [the] nature or extent of the burn suffered by Patrick Kemp, or the specific circumstances in which it occurred" and therefore there is "no evidence that points to what [Kemp's] mental state was at the time of the incident."

"A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist." K.S.A. 2017 Supp. 21-5202(i). Similarly, a person acts knowingly or with knowledge, "with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2017 Supp. 21-5202(i).

Under the stipulated facts of this case, it is undisputed that Kemp became "violent during an argument, and burned [Patrick] on the arm with a hot iron." When being wielded as a weapon to inflict a burn, an iron requires close, direct, and physical contact with the person against whom it is being used. As such, an attacker who burns his or her victim with a hot iron generally does so with knowledge of the nature of his or her actions and should be reasonably certain of the result that those actions will cause. See

5

K.S.A. 2017 Supp. 21-5202(i). Therefore the undisputed fact that Kemp burned her husband with a hot iron is sufficient circumstantial evidence from which a fact-finder could reasonably infer that she acted knowingly. See *Logsdon*, 304 Kan. at 25.

Despite this, Kemp argues that "[t]he stipulated facts are vague, encompassing multiple scenarios and reasons as to how this burn to Patrick Kemp's arm occurred." She then speculates that "[t]he burn could have [been] the result of an accident rather than a knowing act." But, as noted above, a finding based on circumstantial evidence need not exclude every other reasonable conclusion. See *Logsdon*, 304 Kan. at 25. Instead, it is enough that the district court's finding is a reasonable inference based upon the circumstantial evidence. 304 Kan. at 25. Such is the case here, and we believe there was sufficient evidence to support the district court's finding that Kemp acted knowingly when she burned her husband with an iron.

Kemp does not dispute that she caused the hot iron to come into physical contact with her husband's arm or that he was actually burned because of it. Instead she argues that "[t]here is no information within the stipulated facts to support a finding [that] the physical contact in this case was committed in a manner that could have resulted in great bodily harm, disfigurement or death."

Kansas courts consistently differentiate bodily harm from great bodily harm. *State v. Moore*, 271 Kan. 416, 419, 23 P.3d 815 (2001). "The word 'great' distinguishes the bodily harm necessary [for aggravated battery] from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery." *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984). "The same is true with regard to 'disfigurement'" which "has no single technical meaning or single definition and should be considered in the ordinary sense." *Moore*, 271 Kan. at 419. Whether physical contact could have resulted in great bodily harm, disfigurement, or death is a question of fact. *Dubish*, 234 Kan. at 715-16.

6

As noted above, it is undisputed that Kemp became violent during an argument and burned Patrick on the arm with a hot iron. That alone is enough for a rational fact-finder to find beyond a reasonable doubt that Kemp caused physical contact with another person in a manner whereby great bodily harm, disfigurement, or death could be inflicted. See *Moore*, 271 Kan. at 417-18, 421 (burning victim with hot iron constituted great bodily harm and/or disfigurement). And while Kemp argues that the stipulated facts fail to explain the extent of the injury, that is not an element that the State is required to prove. Instead, the State must simply show that the physical contact was done in a manner whereby great bodily harm, disfigurement, or death *could be* inflicted. See K.S.A. 2017 Supp. 21-5413(b)(1)(C). We believe the stipulated facts are sufficient to make such a showing and therefore affirm Kemp's conviction for aggravated battery as charged in this case.

*Endangering a child*

Next, Kemp argues that there was insufficient evidence to prove beyond a reasonable doubt that she was guilty of endangering a child. To make a prima facie case of endangering a child, the State must show that Kemp: (1) knowingly and unreasonably caused or permitted, (2) a child under the age of 18, to (3) be placed in a situation in which the child's life, body, or health is endangered. See K.S.A. 2017 Supp. 21-5601(a). Kemp concedes that there was sufficient evidence to show that her son was under the age of 18. Thus we need only determine if there was sufficient evidence to support the first and third elements of the crime charged.

Kemp argues that the stipulated facts in this case "fail to prove, or even assert, that the act in this case was intentionally done."

Before directly addressing the issues, we pause to note that the State's complaint in this case charged Kemp with one count of endangering a child, in violation of K.S.A.

2017 Supp. 21-5601(a). Thereafter, the description of the charge in the complaint stated that "[o]n or about the 15th day of February, 2016 in the State of Kansas and County of Shawnee, TAYANA A KEMP, did, then and there, unlawfully, *intentionally* and unreasonably cause or permit a child under the age of 18 years, to-wit: [name omitted] (XX/XX/14), to be placed in a situation in which the said child's life, body or health may be injured or endangered." (Emphasis added.) But the actual language of the statute, K.S.A. 2017 Supp. 21-5601(a), defines endangering a child as "*knowingly* and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be endangered." (Emphasis added.) However, because proof of a higher degree of culpability constitutes proof of a lower degree as well, we will analyze this case under the higher, intentional standard. See K.S.A. 2017 Supp. 21-5202(c).

"A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2017 Supp. 21-5202(h). Crimes that require a defendant to act intentionally are specific intent crimes meaning that "the intent to accomplish the precise act or element of the crime which the law prohibits is necessary." *State v. Mountjoy*, 257 Kan. 163, Syl. ¶ 8, 891 P.2d 376 (1995); see K.S.A. 2017 Supp. 21-5202(h).

In this case it is undisputed that Kemp threw several items at her husband who was sitting on the couch. As she was doing so, their 14-month-old son walked into the room and she accidentally struck him in the head with a desktop speaker. Based on that circumstantial evidence, a rational fact-finder could reasonably infer that Kemp intentionally and unreasonably caused her child to be placed in a situation that endangered his life, body, or health. Despite this, Kemp argues that because the stipulated facts state that she "accidentally" hit the child with the desktop speaker, they "fail to prove, or even assert, that the act in this case was intentionally done." But that argument

8

misconstrues the elements of endangering a child. The State is not required to show that Kemp intentionally hit or injured her child. Instead, it must simply show that she intentionally caused her son to be placed in a situation in which his life, body, or health could be endangered. See K.S.A. 2017 Supp. 21-5601(a). She did so by intentionally throwing items across the room, thereby creating the situation that endangered the child. Kemp's argument is therefore without merit. We find that the stipulated facts are sufficient to show that Kemp acted intentionally.

Next, Kemp argues that, because there was no evidence or indication that her son was actually injured, "it cannot be known whether the child was in a situation where he was in danger of being harmed or of having his health endangered." As noted above, after establishing that the victim was a child under 18 years of age and that the defendant acted intentionally/knowingly, the State must lastly show that the child was caused or permitted "to be placed in a situation in which the child's life, body or health may be endangered." K.S.A. 2017 Supp. 21-5601(a). "[T]he word 'may' as used in K.S.A. 21-3608(1)(b) [now codified as K.S.A. 2017 Supp. 21-5601(a)] means something more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result." *State v. Fisher*, 230 Kan. 192, 195, 631 P.2d 239 (1981). To determine if there exists a reasonable probability that harm to the child will result, the fact-finder must consider three factors: "(1) the gravity of the threatened harm, (2) the legislature's or regulatory body's independent assessment that the conduct is inherently perilous, and (3) the likelihood that harm to the child will result or that the child will be placed in imminent peril." *State v. Cummings*, 297 Kan. 716, 731, 305 P.3d 556 (2013).

Here it is undisputed that Kemp was engaged in a violent argument with her husband; as a result of which she was throwing objects, including a desktop speaker, around the room that her son was permitted to wander into. That volatile situation presented a serious threat of harm to the child, who was only 14 months old at the time

9

and therefore unlikely to be able to either withstand or brush off a blow from one of the objects.

Further, the Legislature has independently assessed that Kemp's conduct was inherently perilous by criminalizing it as simple battery. See K.S.A. 2017 Supp. 21-5413(a) (defining simple battery). And finally, there was a high likelihood that her son would suffer harm and indeed he did suffer harm when Kemp accidentally struck him in the head with a desktop speaker. Kemp attempts to refute these facts by arguing that "there was no indication that the child was actually injured as a result of this incident." But again, as noted above, the State was not required to prove that the child was actually injured and instead was simply required to show that the harm was a reasonable probability. See *Fisher*, 230 Kan. at 195. In our opinion, the stipulated facts satisfy that requirement, and therefore we affirm Kemp's conviction for endangering a child.

*Criminal damage to property*

Finally, Kemp argues that there was insufficient evidence to prove beyond a reasonable doubt that she was guilty of criminal damage to property. To make a prima facie case of criminal damage to property, the State must show that Kemp: (1) knowingly damaged, destroyed, defaced, or substantially impaired the use of (2) any property in which another has an interest without that person's consent. K.S.A. 21-5813(a)(1).

In this instance, Kemp repeats her earlier contention that "there is no way to determine [her] culpable state of mind from the stipulated facts." Specifically, Kemp "asserts that the stipulated facts are so few, and say so little about the alleged incident, that they completely fail to prove the required culpable state of mind without the employment of sheer speculation on the part of the factfinder."

Again, as we have previously stated, a person acts knowingly or with knowledge with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. Similarly, a person acts knowingly or with knowledge with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result. K.S.A. 2017 Supp. 21-5202(i).

Under the stipulated facts of this case, Kemp threw several items at her husband while he was sitting on the couch, most of which missed and damaged the wall behind him. She also "grabbed a kitchen knife and stabbed it into a wall in anger." Based on that circumstantial evidence, a fact-finder could reasonably infer that Kemp was aware of both the nature of her conduct, including throwing items and stabbing a wall, as well as the result that her conduct was reasonably certain to bring about, such as damage to the walls of the apartment. As such, we must reject Kemp's argument that the State failed "to prove the required culpable state of mind" as wholly without merit and we instead find that there was sufficient evidence to show that Kemp acted knowingly.

As a last complaint about the criminal damage to property charge, Kemp argues that there "was insufficient evidence contained in the stipulated facts to prove that Patrick Kemp had the required interest in the property that was allegedly damaged." When a person's interest in the damaged property is not contested at trial, the State is not required to establish the nature of the interest in order to satisfy the statutory requirement. *State v. Fisher*, 304 Kan. 242, 262, 373 P.3d 781 (2016). Instead, it must merely show that there was an interest. See *State v. Bollinger*, 302 Kan. 309, 314, 352 P.3d 1003 (2015). By contrast, "when 'the interest is contested at trial, it may be incumbent upon the State to establish the nature' of the interest." *Fisher*, 304 Kan. at 262.

Here, the stipulated facts and the police report note that on the date of the incident, Kemp was married to Patrick and the two resided in the same apartment in Topeka.

11

Pursuant to the agreement, Kemp was not permitted to contest those facts at trial. Thus Patrick's interest in the damaged property went uncontested. As such the State was not required to specify the type of interest that Patrick possessed and instead it was enough for the State to simply show that Patrick's interest existed. See *Fisher*, 304 Kan. at 262; *Bollinger*, 302 Kan. at 314.

The stipulated facts outlined above satisfy that requirement by providing two bases for Patrick's interest: (1) that he was married to Kemp and (2) that he was a resident of the apartment that Kemp damaged. See *Fisher*, 304 Kan. at 262 (resident of home has sufficient interest to satisfy statutory requirement); *Bollinger*, 302 Kan. at 315 (Derived "from the legal rights inherent in a marital relationship," a spouse has "a sufficient, cognizable legal interest in [the marital home] to satisfy the statutory requirement."). Further, even if the State was required to specify the type of interest that Patrick possessed, the stipulated facts outlined above constitute circumstantial evidence from which a fact-finder could reasonably infer the type of interest that existed.

In conclusion, we reject Kemp's argument that there is insufficient evidence to prove that Patrick had the required interest in the damaged property. We find that argument to be inconsistent with both existing caselaw and the specific facts stipulated to in this case. We find there is sufficient evidence to affirm Kemp's conviction for criminal damage to property.

Affirmed.