NOT DESIGNATED FOR PUBLICATION

No. 121,246

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL SHAWN HOPE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed March 27, 2020. Affirmed.

*R. Bruce Kips*, of Shawnee, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Daniel Shawn Hope appeals his conviction of one count of child endangerment for placing a three-year-old child in the trunk of a car, where the child remained as the car drove off. Hope's only claim on appeal is that there was insufficient evidence to support his conviction. We disagree and affirm the district court's judgment.

FACTS

On January 4, 2018, Norma Fernandez drove her Volkswagon Jetta to a Dollar Tree store in Olathe. All the seats in Fernandez' Jetta were full. Fernandez later testified

1

that her son, R.N.F., was in the front passenger seat. Fernandez' daughter, E.L.F., was in the backseat with Hope and his girlfriend.

Darla Hudson and her husband were in the Dollar Tree parking lot when Fernandez' car parked in front of them. Hudson's husband saw children get out of the Jetta's trunk and go with Fernandez into the store. Hudson decided that if she and her husband were still waiting in the parking lot when the family returned, she would film them. The family did return, and Hudson filmed them getting into the Jetta.

Hudson's video, which the State admitted at trial, showed Hope place Fernandez' three-year-old son, E.G.F., into the trunk of the car. Fernandez' 10-year-old son, J.N.F., then climbed into the trunk and shut the lid. Hope grabbed the key from the trunk, got into the backseat, and Fernandez drove the car out of the parking spot. Hudson posted the video to Facebook. Kelsey Trauer, a behavioral analyst and mandated reporter, saw the video on Facebook and called the police.

Olathe Police Officer Geffrey Martin decided to investigate the incident because it seemed "unreasonable" to put two children in the trunk of a car without safety restraints and he thought "[l]ots of bad things can probably happen." Martin ran the tag of the vehicle in the video and determined that it was registered to Fernandez. Olathe Police Sergeant Brian Little later contacted Fernandez and interviewed her about the incident. Fernandez admitted that she drove her car from the Dollar Tree to her home with the two children in the trunk. She told Little she thought it was a minor mistake and dangerous to put the children in the trunk, but she ultimately "pass[ed] it off as not a big deal."

On March 1, 2019, the State charged Hope with two counts of misdemeanor child endangerment—count one for E.G.F. and count two for J.N.F. The record reflects that Fernandez pled guilty to child endangerment because of this incident in a separate case.

2

On March 4, 2019, the district court held a jury trial. Hudson and Trauer testified about the video. Martin testified to receiving the report. Martin also said the day Hudson took the video was a cold day and he has never come across a heated trunk. Martin observed that E.G.F. looked to be of an age requiring him to be secured in a car seat when riding in a car. Little testified about his interview with Fernandez.

Fernandez testified that she has four children, including E.G.F. and J.N.F. She said the two children were in the trunk that day because "[i]t was really cold outside and there was a lot of us and we all didn't fit inside." Fernandez said it was J.N.F. who decided the children would ride in the trunk and that she gave him a cell phone for light. Besides riding in the trunk when they left the Dollar Tree, the children also rode in the trunk from their school to the Dollar Tree. When asked if she knew putting the children in the trunk was dangerous, Fernandez replied, "Yes, of course."

The jury found Hope guilty of count one, endangering a child in relation to E.G.F., and not guilty of count two, endangering a child in relation to J.N.F. On March 22, 2019, the district court sentenced Hope to 6 months in jail and imposed 12 months' probation. Hope timely appeals.

ANALYSIS

Hope argues that there was insufficient evidence to support his conviction of endangering a child. The State argues that because Hope was the person who placed E.G.F. into the trunk, where he remained as the car drove off, there was sufficient evidence to convict him of endangering a child.

The standard of review for a claim of sufficiency of the evidence is well known:

3

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Endangering a child is "knowingly and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be endangered." K.S.A. 2019 Supp. 21-5601(a). The word "may" means "'a reasonable probability.'" *State v. Cummings*, 297 Kan. 716, 723, 305 P.3d 556 (2013) (quoting *State v. Fisher*, 230 Kan. 192, 195, 631 P.2d 239 [1981]). In determining whether there was a reasonable probability that a child's life, body, or health may be endangered, the trier of fact should consider, among other relevant factors:

"(1) the gravity of the threatened harm, (2) the legislature's or regulatory body's independent assessment that conduct is inherently perilous, and (3) the likelihood that harm to the child will result or that the child will be placed in imminent peril. '[L]ikelihood' means more than a faint or remote possibility." *Cummings*, 297 Kan. at 731.

Hope challenges only the third factor in the *Cummings* analysis. He argues that the State did not establish that placing E.G.F. in the trunk created a situation in which it was likely that harm would result or that he was in imminent peril. Hope cites *Cummings* and *State v. Laird*, No. 110,756, 2014 WL 6676136 (Kan. App. 2014) (unpublished opinion), to support his argument that "the risk of serious harm to E.G.F. was nothing 'other than a faint or remote possibility.'" Hope argues that the State did not present any evidence about how far the car traveled or how long the children were in the trunk. He also argues that the State failed to present testimony from an engineer or doctor to establish that E.G.F. would be unable to breathe or would be subjected to an unreasonable health risk.

4

The State argues that the possibility of injury was not faint or remote because Hope placed E.G.F. in the trunk, a place not designed to hold passengers or to keep passengers safe. The State argues that any time the vehicle jolts, the child could have flown into the door hinges, wheel wells, or another part of the trunk.

Child endangerment cases are fact sensitive. *State v. Sharp*, 28 Kan. App. 2d 128, 130, 13 P.3d 29 (2000). In *Cummings*, the defendant, who provided daycare services for children at her home, placed a 13-month-old child in her car seat to nap. When Cummings checked on the child two hours later, she discovered that the child was not breathing. The child died of asphyxia from ligature strangulation. At trial, Cummings testified that she believed the car seat was a safe place for a child to nap and stated that she had placed children in car seats to nap before with no harm occurring. The jury found Cummings guilty of involuntary manslaughter based on the underlying crime of endangering a child.

On appeal, Cummings claimed the district court erred in failing to define "reasonable probability" in the jury instruction on endangering a child. 297 Kan. at 720. In reversing Cummings' conviction on the instructional error, our Supreme Court found that the State failed to show that placing the child in her car seat to nap created more than a faint or remote possibility of harm. 297 Kan. at 732-33. The court pointed out that the State could have met its burden by presenting testimony from a doctor explaining the increased risk under these circumstances or by referring to medical treatises or statistics on the risk of death from certain sleeping arrangements. 297 Kan. at 732-33.

In *Laird*, this court reversed Laird's child endangerment conviction for leaving a sleeping four-year-old at home alone for about five minutes. This court found that the evidence established no more than a faint or remote possibility of harm because Laird was only gone for about five minutes, the child was asleep the whole time, and there was not any condition present that posed imminent danger. 2014 WL 6676136, at *7.

5

Hope's case is distinguishable from *Cummings* and *Laird*. Hope placed a three-year-old child in the trunk of a sedan—a compartment not meant to hold passengers, let alone children. Fernandez testified that she knew placing the children in the trunk was dangerous. And contrary to Hope's assertion, the State did not need to show that E.G.F. would be unable to breathe in the trunk to establish a reasonable probability that his life, body, or health would be endangered by being in the trunk. The State presented evidence at trial that trunks are not heated, trunks are dark, trunks are not meant for passengers, and trunks contain no restraints. The video showed that Hope was the person who placed E.G.F. in the trunk before Fernandez drove away. Taking the evidence in the light most favorable to the State, it was a reasonable inference that E.G.F. could be injured simply by riding unrestrained in a compartment not designed to hold passengers.

The district court instructed the jury that it had the "right to use common knowledge and experience in regard to the matter about which a witness has testified." The jury could reasonably infer from its own experience of riding in a car that even restrained passengers shift with the motion of the car, especially as it turns or goes over bumps. E.G.F. would be shifted and jostled about in the trunk and he was at risk of hurting himself by either hitting part of the trunk or colliding with his unrestrained brother. This risk was more than a faint or remote possibility and it existed the entire time that E.G.F. rode in the trunk, even if it were only for a short distance. Thus, we conclude there was sufficient evidence to support Hope's conviction of child endangerment.

Affirmed.