(298 P.3d 386)
No. 108,108

In the Interest of A.E.S., D.O.B. XX/XX/1998, a Female.

Opinion filed April 5, 2013.

*Rebekah Gaston,* of Lawrence, for appellant M.S.

*Patrick J. Hurley,* assistant district attorney, *Charles E. Branson,* district attorney, and *Derek Schmidt,* attorney general, for appellee.

*Adam M. Hall,* of Collister & Kampschroeder, of Lawrence, for appellee guardian ad litem.

Before ARNOLD-BURGER, P.J., GREEN, J., and HEBERT, S.J.

HEBERT, J.: M.S., the father of the minor child A.E.S., appeals from an order entered by the District Court of Douglas County granting temporary custody of A.E.S. to Social and Rehabilitation Services (SRS). M.S. argues that K.S.A. 2011 Supp. 38-2243(f)(3), which allows a court to enter an order of temporary custody in a child in need of care (CINC) case, is unconstitutionally vague and overbroad. M.S. also argues that the evidence was insufficient to support the district court's findings and orders. The State argues that the appeal should be dismissed as moot. The guardian ad litem (GAL) argues that this court should retain the appeal to consider the constitutional arguments.

For the reasons hereinafter set forth, we find that M.S.'s appeal is moot, since the temporary order has been superseded by subsequent orders of adjudication and disposition. However, pursuant to an exception to the mootness doctrine, we retain the appeal to consider the constitutional issues raised and find that K.S.A. 2011 Supp. 38-2243(f)(3) is neither unconstitutionally vague nor overbroad.

## PROCEDURAL BACKGROUND

On February 22, 2012, SRS filed an application pursuant to K.S.A. 2011 Supp. 38-2242 for an ex parte order of protective custody for A.E.S., a minor child born in 1998. On February 24, 2012, the district court conducted a temporary custody hearing. The court found probable cause existed to believe the health and welfare of A.E.S. may be endangered without further care pending a formal CINC hearing. Pursuant to K.S.A. 2011 Supp. 38-2243, the court placed A.E.S. in the temporary custody of SRS pending a formal CINC hearing which was scheduled for April 24, 2012.

M.S. filed a timely appeal from the order of temporary custody.

The formal CINC hearing was convened on June 11, 2012, and after an intervening continuance, was concluded on July 17, 2012. A.E.S. was adjudicated as a CINC and was specifically ordered to remain in the custody of SRS. The court took some dispositional evidence and continued the dispositional hearing to September 28, 2012, due to time constraints.

On September 28, 2012, the parents of A.E.S., their attorneys, the GAL, and the assistant district attorney appeared and requested the court approve an agreed order of disposition. The court's approval was memorialized in a "Combined Journal Entry of Disposition" filed on October 25, 2010. The agreed order sets forth that the father, M.S., supports the agreement and participated in its development through his attorney. The agreed order provided that custody of A.E.S. "shall remain vested with the Secretary [of SRS]," and further determined that "[r]eturning the child to a parental home on a full-time basis is contrary to the child's welfare." The detailed journal entry set forth the terms and conditions that the parents would have to meet in order to reintegrate

the family. A permanency hearing was scheduled for February 11, 2013.

Upon motion of the State, the combined journal entry of disposition was added to the record on appeal pursuant to Supreme Court Rule 3.02(d)(3) (2012 Kan. Ct. R. Annot. 18). M.S. conceded the propriety of the addition.

## M.S.'s APPEAL OF THE TEMPORARY CUSTODY ORDER IS MOOT

An order of temporary custody is an order from which a party may take an appeal. K.S.A. 2011 Supp. 38-2273(a); *In re D.I.G.*, 34 Kan. App. 2d 34, 114 P.3d 173 (2005). The State does not suggest otherwise but argues that the temporary custody issue is moot because of the subsequent adjudication and disposition orders.

A case is moot when a justiciable controversy no longer exists. See *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009). "A justiciable controversy has definite and concrete issues between the parties and 'adverse legal interests that are immediate, real, and amenable to conclusive relief.' " *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012).

Our Supreme Court recently addressed the mootness doctrine in *State v. Hilton*, 295 Kan. 845, 848-49, 286 P.3d 871 (2012):

"Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. McKnight*, 292 Kan. 776, 778, 257 P.3d 339 (2011). That doctrine, however, is not a question of jurisdiction. Rather, this court has previously described the mootness doctrine as a court policy, which recognizes that the role of a court is to ' "determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive." ' *State v. Bennett*, 288 Kan. . . . [at] 89 . . . (quoting *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 [1996]).

"A court policy necessarily comes about through prior opinions of the court, *i.e.*, the mootness doctrine developed through court precedent. Accordingly, our review is unlimited. See *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012) ('To the extent our decision involves . . . the interpretation and application of . . . court precedent, we are resolving questions of law and, thus, exercising unlimited review. *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1213, 135 P.3d 1203 [2006].')."

Under K.S.A. 2011 Supp. 38-2243, the terms "order of temporary custody," "adjudication," and "disposition" are terms of art each carrying its own meaning. See *In re D.M.M.*, 38 Kan. App. 2d 394, 398, 166 P.3d 431 (2007). The "order of temporary custody" is the first step in a sequence, wherein the court identifies the person or agency that will have temporary custody of a child determined to be in need of protection. See *In re C.E.*, 47 Kan. App. 2d 442, 448, 275 P.3d 67 (2012). Such order covers the period of time until an "adjudication" which is the next step in the sequence where the court determines if the child is a CINC. If the child is found not to be a CINC, the proceedings are dismissed. K.S.A. 2011 Supp. 38-2251(a). If, however, the child is found to be a CINC the court enters an "adjudication order" and proceeds to a "disposition." K.S.A. 2011 Supp. 38-2251(b). The temporary custody order may remain in effect until disposition, or the court may modify the order of custody at adjudication.

In this case, the court issued a temporary order placing A.E.S. in the temporary custody of SRS. Although M.S. filed an appeal from this temporary order, there is no provision to stay the CINC proceeding pending such an appeal. The court subsequently adjudicated A.E.S. as a CINC and specifically ordered that she remain in SRS custody pending disposition. An order of adjudication is also an appealable order under K.S.A. 2011 Supp. 38-2273(a). The specific reference to continuation of custody with SRS would supersede the temporary custody order and would eliminate any remaining justiciable controversy regarding custody arising from the temporary order.

But our consideration need not stop here. The district court proceeded to the next step of the CINC process and entered the combined journal entry of disposition as proposed by all parties on September 28, 2012. M.S. concedes that this journal entry is properly added to the record on appeal pursuant to Supreme Court Rule 3.02, and thus, is properly within our review.

As noted above, the combined journal entry explicitly establishes that M.S. agrees that custody of A.E.S. shall remain vested with SRS and that "[r]eturning the child to a parental home on a full-time basis is contrary to the child's welfare." This agreement ef-

fectively concedes the issue raised by M.S. and concludes any controversy regarding sufficiency of evidence to support the court's findings in the temporary custody order that A.E.S. was in need of protection. Because there is no longer any real, immediate, adverse legal interest before this court which is amenable to conclusive relief, M.S.'s appeal should be dismissed as moot, unless an exception to the mootness doctrine applies.

## EXCEPTIONS TO THE MOOTNESS DOCTRINE

Because the mootness doctrine is not jurisdictional, it is subject to exceptions. See *Hilton*, 295 Kan. at 848-50. "One commonly applied exception to the rule that appellate courts will not review moot issues is where the moot issue 'is capable of repetition and raises concerns of public importance.' " *Montgomery*, 295 Kan. at 841; *Hilton*, 295 Kan. at 850. Public importance means " ' " 'something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals.' " [Citations omitted.]' " *Montgomery*, 295 Kan. at 841; *Hilton*, 295 Kan. at 851.

Since the mootness doctrine is a court policy which has developed through court precedent, this court's review is unlimited. *Montgomery*, 295 Kan. at 841. Whether to retain a moot case in order to determine a question of public importance lies in the discretion of the reviewing court. See *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 290, 807 P.2d 664 (1991).

M.S.'s arguments regarding sufficiency of evidence have been determined to be moot because the order of disposition concludes the evidentiary issues. Any further consideration of such issues would be case specific and would not implicate any exception to the mootness doctrine. Such consideration would simply result in an advisory opinion which we decline to render.

M.S.'s arguments regarding the constitutionality of the statute— K.S.A. 2011 Supp. 38-2243(f)(3)—which governs the temporary orders procedure, does raise an issue which is capable of repetition and concerns a matter of public importance. It is highly unlikely that anyone in his circumstances could have obtained relief from

any error in the temporary order proceeding before the case became moot. See *Hilton*, 295 Kan. at 851; see also *McKnight*, 292 Kan. at 778-79. Here, although K.S.A. 2011 Supp. 38-2273(a) specifically allows for appeals from a temporary order, there is no provision for an expedited appeal or stay of further CINC proceedings. K.S.A. 2011 Supp. 38-2251(c) provides that an adjudication order is to be entered within 60 days after a petition is filed, and disposition is to be rendered promptly thereafter. Thus, by the time the appeal of a temporary order reaches this court, it would likely be moot. Since the constitutionality of the temporary order statute is a matter of public importance, we may retain this issue on appeal.

## Constitutional Issues Not Raised in the District Court

M.S.'s constitutional challenge must overcome one further procedural obstacle. M.S. concedes that he did not challenge the constitutionality of the statute before the district court. Generally, "[c]onstitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review." *State v. Leshay*, 289 Kan. 546, 553, 213 P.3d 1071 (2009). However, under one of the recognized exceptions to this general rule, an appellate court may consider a constitutional question raised for the first time on appeal if consideration of the claim is necessary to serve the ends of justice or to prevent a denial of fundamental rights. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010).

In *Troxel v. Granville*, 530 U.S. 57, 63, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), the United States Supreme Court noted: "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this court." In light of this pronouncement, we will consider M.S.'s constitutional issues.

## Standard of Review

"The constitutionality of a statute is a question of law to which this court applies a de novo standard of review." *Dissmeyer v. State*, 292 Kan. 37, 39, 249 P.3d 444 (2011); *State v. Wilson*, 267 Kan.

550, 555, 987 P.2d 1060 (1999). However, " 'a statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down.' [Citations omitted.]" *Kansas Judicial Review v. Stout,* 287 Kan. 450, 460, 196 P.3d 1162 (2008).

*Analysis*

K.S.A. 2011 Supp. 38-2243, the statute under which A.E.S. was placed in temporary custody of SRS, states in pertinent part:

"(a) Upon notice and hearing, the court may issue an order directing who shall have temporary custody and may modify the order during the pendency of the proceedings as will best serve the child's welfare.

. . . .

"(f) *The court may enter an order of temporary custody after determining there is probable cause to believe that the:* (1) Child is dangerous to self or to others; (2) child is not likely to be available within the jurisdiction of the court for future proceedings; or (3) *health or welfare of the child may be endangered without further care.*

. . . .

(i)(1) The court shall not enter the initial order removing a child from the custody of a parent pursuant to this section unless the court first finds probable cause that: (A)(i) the child is likely to sustain harm if not immediately removed from the home;

(ii) allowing the child to remain in home is contrary to the welfare of the child; or

(iii) immediate placement of the child is in the best interest of the child; and

(B) reasonable efforts have been made to maintain the family unit and prevent the unnecessary removal of the child from the child's home or that an emergency exists which threatens the safety to the child." (Emphasis added.)

M.S. challenges section (f)(3) of the statute as being unconstitutionally vague and overbroad. He does not separate his arguments in his brief, but our Supreme Court, in *Wilson,* discussed and distinguished the concepts:

"Vagueness and overbreadth are often confused. The difference between the two concepts was discussed in *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 533, 646 P.2d 1091 (1982):

'While a vague statute leaves persons of common intelligence to guess at its meaning, an overbroad statute makes conduct punishable which under some cir-

cumstances is constitutionally protected. [Citations omitted.] Obviously, almost every law is potentially applicable to constitutionally protected acts. A successful overbreadth challenge can thus be made only when 1) the protected activity is a significant part of the law's target, and 2) there exists no satisfactory method of severing the law's constitutional from its unconstitutional applications. [Citation omitted.]'

. . . .

' "The distinction between the doctrines of overbreadth and vagueness is that the overbreadth doctrine is applicable primarily in the First Amendment area and may render void legislation which is lacking neither in clarity nor precision, whereas the vagueness doctrine is rested on the due process clauses of the Fifth and Fourteenth Amendments and is applicable solely to legislation which is lacking in clarity and precision." ' " *Wilson*, 267 Kan. at 556-57.

### *Vagueness*

Our Supreme Court has held that "[a] statute that either requires or forbids the doing of an act in language that is so vague the persons of common intelligence must guess at its meaning and will differ as to its application violates the 14th Amendment to the United States Constitution and is thus void for vagueness." *Dissmeyer*, 292 Kan. at 39.

In determining whether the statute is unconstitutionally vague, we first look at whether the statute gives sufficient warning of the prohibited conduct under common understanding. Then we consider whether the statute adequately guards against arbitrary enforcement. *In re Comfort*, 284 Kan. 183, 199, 159 P.3d 1011 (2007); *In re A.F.*, 38 Kan. App. 2d 773, 778, 172 P.3d 66 (2007). The standards for vagueness with regard to CINC cases have been held to be somewhere between the tighter standard applied to criminal statutes and the looser standards applied to business regulation statutes. *In re Brooks*, 228 Kan. 541, 544, 618 P.2d 814 (1980); *In re A.F.*, 38 Kan. App. 2d at 777.

M.S. focuses his vagueness challenge on the phraseology of K.S.A. 2011 Supp. 38-2243(f)(3) which allows a court to enter a temporary custody order based on "probable cause to believe that the: . . . (3) health or welfare of the child *may* be endangered without further care." (Emphasis added.) He argues that this standard is unreasonably low, but he fails to support his argument by citation of pertinent authority or other showing why his argument

is sound despite a lack of authority. We note however, that in *State v. Fisher*, 230 Kan. 192, 194-95, 631 P.2d 239 (1981), our Supreme Court discussed the meaning of the word "may" in the context of the criminal endangerment statute, K.S.A. 21-3608(a). The court concluded that the word "may" as used in that statute means something "more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result." *Fisher*, 230 Kan. at 195; see also *State v. Sharp*, 28 Kan. App. 2d 128, 135, 13 P.3d 29 (2000). In *Wilson*, the court reiterated its ruling that the endangerment statute was not unconstitutionally vague. 267 Kan. at 556. We find this definition of "may" to be appropriate in the context of K.S.A. 2011 Supp. 38-2243.

In rationale pertinent to our present inquiry, the court in *Fisher* pointed out that the purpose of the endangering statute is "to protect children and to prevent their being placed where it is reasonably certain that injury will result." 230 Kan. at 199. Similarly, K.S.A. 2011 Supp. 38-2201(b)(1) provides that the Code for Care of Children "shall be liberally construed to carry out the policies of the State" which include considering "the safety and welfare of a child to be paramount in all proceedings·under the code."

The State or an individual perceiving that a child may be in danger faces two options: (1) They can do nothing and risk the possible perpetuation of the threat to the child's health or welfare; or (2) they can seek a temporary custody order and a CINC determination. The second option protects the child from the perceived danger until a more formal CINC hearing can be held while ensuring that the facts will be reviewed by a neutral officer before a child is removed from parental custody, thereby also protecting the parent's fundamental rights. *In re A.B.*, No. 102,946, 2010 WL 348295, at *4 (Kan. App. 2010) (unpublished opinion).

We also point out that K.S.A. 2011 Supp. 38-2243(i) specifically provides that a child shall not be removed from the custody of the parent unless the court finds that "[r]easonable efforts have been made to maintain the family unit and prevent the unnecessary removal of the child from the child's home or that an. emergency exists which threatens the safety [of] the child." This mandate, together with the sequence [of] hearings from temporary orders,

through adjudication, disposition, and permanency hearings, protects the parties from arbitrary enforcement of the statute.

In line with this court's duty to resolve all doubts in favor of statutory validity, we find that K.S.A. 2011 Supp. 38-2243(f)(3) is not unconstitutionally vague. The statute gives sufficient warning of prohibited conduct under common understanding and provides an adequate safeguard against arbitrary enforcement.

*Overbreadth*

To succeed in challenging the statute as overly broad, it must be shown that (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory method of severing the law's constitutional from its unconstitutional applications. *Dissmeyer*, 292 Kan. at 40-41. The overbreadth doctrine should be applied sparingly and only as a last resort. *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005); *State v. Teter*, 47 Kan. App. 2d 608, 615, 278 P.3d 968 (2012).

M.S. argues that this statute is overly broad because almost any child in Kansas would meet the criteria of section (f)(3). He notes that if a child otherwise lives lawfully with his or her parents in an area with geographic dangers, the child's health or welfare may still be endangered. He even suggests that the statute would cover children who were permitted by their parents to play football despite the likelihood of injury.

In *Wilson*, the Supreme Court considered nearly identical arguments that the criminal endangerment statute prohibited conduct and activities which were lawful, including the football example cited by M.S. herein. In finding the arguments to be without merit, the court reasoned that "courts will not give strained meanings to legislative language through a process of imaginative hypothesizing; a common-sense interpretation of the statute is the guiding principle." 267 Kan. at 557.

The GAL focuses the overbreath challenge on the statutory language "without further care." It is first asserted that "without further care" does not require a showing of imminence or particular gravity to the element of endangerment. It is further suggested that "without further care" is overly broad because all children, by

their very nature, require continuous care to maintain their health and welfare.

While the statute could incidentally impact a fit parent's right to raise his or her child, protected activity is not a "significant part of the law's target." See *Smith v. Martens*, 279 Kan. at 253. The target of the law is parents who may have unreasonably endangered or neglected the health and welfare of a child.

The "overbreadth" arguments once again overlook the safeguards built into section (i), requiring reasonable efforts to maintain the family unit or the existence of an emergency prior to entry of an order removing a child from parental custody.

Adopting the common-sense guiding principle of *Wilson*, we reject the overbreadth challenges raised by M.S. and the GAL.

### Conclusion

We conclude and determine that K.S.A. 2011 Supp. 38-2243(f)(3), when read as a whole, is neither unconstitutionally vague, nor overbroad, and does not violate the due process guarantees of the 14th Amendment to the United States Constitution.

Affirmed.