NOT DESIGNATED FOR PUBLICATION

No. 114,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.G.,
a minor.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JOSEPH D. JOHNSON, judge. Opinion filed April 22, 2016. Reversed and remanded.

*Jennifer Martin Smith*, guardian ad litem, of Topeka, for appellant.

*Jodi Litfin*, assistant district attorney, and *Chadwick J. Taylor*, district attorney, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*: At a hearing in July 2015, the district court determined an emergency situation existed that warranted the placement of A.G., a 16-year-old male, into the immediate temporary custody of the Kansas Department for Children and Families (DCF). The court determined an emergency existed because both of A.G.'s parents were currently living with friends. A.G. and the State appealed the temporary custody order, arguing that no substantial competent evidence supported the court's determination an emergency existed.

There are two issues before us. The first is whether there was substantial competent evidence to support the district court's finding. K.S.A. 2015 Supp. 38-2243 requires the State to make reasonable efforts to maintain the family unit before entering an order of temporary custody, unless an emergency situation exists which threatens the

1

safety of the child. We find there was no substantial competent evidence to support finding an emergency existed.

The district court in question has a long-standing rule of declaring an emergency exists when neither parent has their own legal residence, *i.e.* living with a friend or any other place they do not have a legal right to be. Federal statutes that establish state guidelines for the Kansas statute in question indicate that an emergency, in this context, is an event where the child may suffer death or bodily harm from the parent. Examples of emergencies include abandonment, torture, chronic abuse, one parent murdering the other parent, one parent committing voluntary manslaughter of another child, and other events indicating an extreme risk to the child. No such conditions existed here.

We must also determine whether we should retain this matter if A.G. has been returned to the custody of one of his parents, rendering this case moot, which may well have occurred.

Under the Kansas law, appellate courts do not traditionally render advisory opinions or otherwise address moot issues. In the present case, the temporary custody order was only effective so long as A.G.'s mother did not have her own residence. Once she obtained her own residence, A.G. would be returned and the issue would be moot. Should we retain the case if it has become moot?

We believe we should. An appellate court may retain a moot case in order to determine a question of public importance that is capable of repetition, as mootness is a court made rule, not a jurisdictional rule. See *In re A.E.S.*, 48 Kan. App. 2d 761, 766, 298 P.3d 386 (2013). The district court has a long tradition of finding an emergency exists where both of the child's parents are staying with friends. Due to the increasing number of children living in this situation, the issue is capable of repetition. The issue is of public importance as parents in subsequent temporary-custody-order appeals will not be able to

2

obtain judicial relief before their claims become moot. We will therefore retain this case even if it has become moot.

The facts of this case are undisputed. On March 27, 2015, the State filed a petition alleging A.G. was a child in need of care (CINC) pursuant to K.S.A. 2015 Supp. 38-2202(d)(6). He had accrued seven absences towards truancy during the fall 2014 school semester. At a first appearance/pretrial setting on June 9, 2015, neither A.G. nor his father appeared; but A.G.'s mother appeared in person and with her attorney. Based on A.G.'s failure to appear, the district court issued an ex parte pick-up order, requesting that he be detained by law enforcement and brought before the court.

A.G. was eventually taken into custody and appeared before the district court on July 1, 2015. The mother appeared in person and with an attorney; A.G. appeared in person and with his guardian ad litem (GAL). The father did not appear in person but was represented by counsel. The GAL advised the court that A.G. had not been adjudicated as a CINC and recommended he be released to the custody of his parents, as there was no reason to keep him in DCF custody. The court expressed concern about releasing A.G. into the custody of his father, with whom he had previously been staying, because the father had no permanent residence and was currently living with a convicted sex offender. Available information also indicated that the father was a user of methamphetamine at the time of the hearing. The GAL informed the court she was requesting A.G. be placed with his mother and none of the drug use and sex offender allegations pertained to the mother or her family.

The district court inquired as to mother's living conditions. She stated she was living with her husband and 6-year-old daughter in a room in a house rented by another person. She stated this living arraignment was only temporary, as they were saving money to move into an apartment of their own. The court immediately stated that releasing A.G. to his mother would not work, as no study had been done on the

3

individuals the mother was living with and the court had no control over those individuals. The mother was not currently employed because she was providing care for her daughter, but her husband had steady employment. Her daughter had been in DCF custody from the time she was 18 months old until she was approximately 5 years old. Ms. Wilsey, a court services officer, stated she had been working with the mother and daughter and had made a referral to Family Preservation Services through DCF to assist the family with obtaining and maintaining housing.

After this factual inquiry, the district court determined that because A.G. did not have a place provided for him by either his father or mother, an emergency existed, warranting placement of A.G. into temporary DCF custody. The mother's attorney alluded to the district court's long-standing position that a parent who resides with friends or family does not have stable housing, thereby creating an emergency situation. The court was concerned that neither parent had a place to stay where they had a legal right of occupancy, emphasizing that either parent could be removed from their current living situation at any time. The GAL advised the court that should either parent be removed from their current living situation, they could go to the Topeka Rescue Mission, an approved reintegration facility.

The district court ultimately determined it "[was] not going to send a child to the mission if in fact [it had] the option of placing the child in the custody of the agency for them to find a more appropriate home." The court again found an emergency existed in the present situation and neither parent was providing A.G. with sufficient shelter. The court ordered A.G. to be placed in the temporary custody of DCF for appropriate placement. The GAL filed a timely notice of appeal on July 29, 2015.

Both A.G. and the State argue the district court's findings were not supported by substantial competent evidence. Further, both parties argue that both parents living temporarily with friends does not rise to the level of an emergency that made it necessary

4

to remove A.G. from the home without having made reasonable efforts to maintain the family. Both parties argue that no competent evidence supported the court's determination that A.G. had no identifiable parental or family resource, a finding necessary to order temporary custody of a minor over the age of 15.

The district court may enter an order of temporary custody based on a probable cause determination. K.S.A. 2015 Supp. 38-2243(f). A preponderance of the evidence means evidence which shows a fact is more probably true than not true. *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008). Where the district court has made findings of fact and conclusions of law regarding a preponderance of the evidence, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the court's conclusions of law. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999). Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014).

Under Kansas law, a district court may enter an order of temporary custody after determining there is probable cause to believe that the health or welfare of the child may be endangered without further care. K.S.A. 2015 Supp. 38-2243(f). Whenever the court determines the necessity for an order of temporary custody the court may place the child in the temporary custody of DCF, if the child is 15 years of age or younger, or, if the child is 16 or 17 years of age, if the child has no identifiable parental or family resources or shows signs of physical, mental, emotional, or sexual abuse. K.S.A. 2015 Supp. 38-2243(g)(1)(F). The court shall not enter the initial order removing a child from the custody of a parent pursuant to this section unless the court first finds probable cause that: The child is likely to sustain harm if not immediately removed from the home; allowing the child to remain in home is contrary to the welfare of the child; or immediate placement of the child is in the best interests of the child; *and* reasonable efforts have

been made to maintain the family unit and prevent the unnecessary removal of the child from the child's home *or* an emergency exists which threatens the safety of the child. K.S.A. 2015 Supp. 38-2243(i)(1).

To place A.G. into temporary custody, the district court was first required to make a probable cause finding, supported by substantial competent evidence, that the health or welfare of A.G. may have been endangered without further care.

To place A.G. in the temporary custody of DCF, the district court was required to make a probable cause finding, supported by substantial competent evidence, that A.G. had no identifiable parental or family resources or he showed signs of physical, mental, emotional, or sexual abuse, as A.G. was 16 years old at the time of the order of temporary custody. The court was required to make a probable cause finding, supported by substantial competent evidence, that A.G. was likely to be harmed if not immediately removed from the home, staying in the home was contrary to his welfare, or immediate removal was in his best interests. If any of these three conditions were met, the court could enter an order of temporary custody, placing A.G. in DCF custody, provided that the State made reasonable efforts to keep the family together *or* an emergency existed which threatened A.G.'s safety.

Throughout the hearing, the district court did not expressly state that A.G.'s health or welfare would be endangered without further care. Instead, the court relied on the living situation of each parent to determine that an emergency situation existed, allowing the court to place A.G. immediately into temporary DCF custody. At the time of the hearing, the father was staying with a convicted sex offender and appeared to be using methamphetamine and the mother was temporarily living with her husband and daughter in one room of a friend's house. The court determined the father was not an option for housing and dismissed the mother as an option because she had no legal right to her

6

present residence and the court did not want A.G. to possibly end up in the rescue mission when the court had the current opportunity to place him into DCF custody.

The court went beyond a determination that A.G.'s health or welfare would be endangered without further care, determining that an emergency existed that was likely to cause immediate harm or detriment to A.G.'s safety. Based on each parent's living situation at the time of the hearing, a determination that A.G.'s safety or welfare may have been endangered without further care was likely supported by substantial competent evidence. The father's use of drugs and residing with a sex offender presented potential danger, as did A.G.'s alternative living situation where his mother could have been evicted at any time, leaving A.G. homeless.

In addition to the first finding above, for the district court to place a 16-year-old into DCF custody, the court must make a finding, supported by substantial competent evidence, that the child has no identifiable parental or family resources or shows signs of physical, mental, emotional, or sexual abuse. K.S.A. 2015 Supp. 38-2243(g)(1)(F).

During the hearing, no evidence of any form of abuse was presented to the district court. Therefore, to place A.G. into DCF custody, the court had to find that A.G. had no identifiable parental or family resources. In the present case, the mother was willing and able to provide for A.G. to the best of her abilities. Though her living situation was not ideal, she was still an available resource and was actively seeking a permanent residence for the family while staying with a friend, which she was doing with consent of the friend's landlord. Based on the mother's status, the court's determination that A.G. had no identifiable parental or family resources was not supported by substantial competent evidence.

Before entering the initial order removing A.G. from parental custody, the district court was required to find that he was likely to be harmed if not immediately removed

7

from the home, that staying in the home was contrary to his welfare, or that immediate removal was in his best interests. If any of these conditions were met, the court could enter an order of temporary custody, placing A.G. in DCF custody, provided that the State made reasonable efforts to keep the family together *or* an emergency existed which threatened A.G.'s safety. K.S.A. 2015 Supp. 38-2243(i).

At the hearing, the district court determined reasonable efforts were not required to maintain A.G. in the home, because an emergency existed. The court found that an emergency existed because A.G. was not being provided with sufficient shelter by either parent. Unfortunately, the Revised Kansas Code for Care of Children, K.S.A. 2015 Supp. 38-2201 *et seq.*, does not define or provide insight into what constitutes an emergency for purposes of temporary custody orders. However, the federal Adoption and Safe Families Act (AFSA), which provides guidelines for states to use when drafting a state code for the care of children, does provide examples of what would constitute an emergency that would allow a trial court to remove the child without making reasonable efforts to maintain the family. 42 U.S.C. § 671(a)(15)(D)(2012). This statue illustrates examples of emergencies as such:

> "[R]easonable efforts . . . shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that—
> (i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse);
> (ii) the parent has
> (I) committed murder (which would have been an offense under section 1111(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;
> (II) committed voluntary manslaughter (which would have been an offense under section 1112(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;

8

(III) aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter; or

(IV) committed a felony assault that results in serious bodily injury to the child or another child of the parent; or

(iii) the parental rights of the parent to a sibling have been terminated involuntarily[.]"

As the federal statute illustrates, an emergency for the purposes of removing the child without making reasonable efforts to maintain the family requires an act by the parent far in excess of not providing their own home. Section 671 clearly indicates that an emergency situation is one where the minor child faces a risk of death or serious bodily harm or where the rights of a parent have already been terminated to a sibling of the child. In the present case, it seems clear that a situation where both of a child's parents do not have their own housing does not rise to the level of emergency as intended by the federal and state drafters. The term emergency was intended to encompass situations where the child faced a much greater risk of personal harm than A.G. did in the present case. As such, substantial competent evidence does not exist to warrant placing A.G. in immediate temporary state custody without making reasonable efforts to maintain the family unit.

Both A.G. and the State argue that should this issue become moot prior to resolution by this court, we should nevertheless retain the case as the issue is capable of repetition and raises concerns of public importance.

Mootness is a doctrine of court policy developed through court precedent, and appellate review of the issue is unlimited. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012).

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. McKnight*, 292 Kan. 776, 778, 257 P.3d 339 (2011). The mootness doctrine, however, is not a question of jurisdiction. Rather, this court has

9

previously described the mootness doctrine as a court policy which recognizes that the role of a court is to "determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive." *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009).

Because the mootness doctrine is not jurisdictional, it is subject to exceptions. *State v. Montgomery*, 295 Kan. 837, 841, 286 P.3d 866 (2012). One common exception is where a moot issue is capable of repetition and raises concerns of public importance. 295 Kan. at 841. Public importance means more than that certain members of the general public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for future conduct. 295 Kan. at 841. A court will determine a moot question of public importance if it feels that the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions. *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 290, 807 P.2d 664 (1991).

In *In re A.E.S.*, 48 Kan. App. 2d 761, 766, 298 P.3d 386 (2013), the court found that the exception to the mootness doctrine, regarding likely repetition and concerns of public importance, did apply. In *In re A.E.S.*, the father filed an appeal from a temporary custody order, but the child in question was adjudicated as a CINC before his appeal could be heard, rendering the appeal moot. The father argued that K.S.A. 2011 Supp. 38-2243(f)(3), orders of temporary custody, was unconstitutional, as it was highly unlikely an individual could obtain relief from error in the temporary order proceeding before the case became moot. The *In re A.E.S.* court determined the constitutionality of the temporary order statute was a matter of public importance, allowing the court to retain the case. 48 Kan. App. 2d at 767. The court stated the issue was of public importance due to the constitutional claim. In deciding to retain the case, the court relied heavily on the possibility that future appeals from temporary custody orders would be rendered moot

10

before reaching an appellate court as there is no provision for an expedited appeal or stay of further CINC proceedings. 48 Kan. App. 2d at 767.

In *State v. Hilton*, 295 Kan. 845, 846, 286 P.3d 871 (2012), the Supreme Court found the exception to the mootness doctrine was applicable where it was highly unlikely anyone could obtain relief on appeal before the issue became moot. The court also found it was necessary—as a matter of public importance—to instruct lower courts on permissible manners of operation during certain proceedings. 295 Kan. at 851. Hilton was sentenced to serve two consecutive 12-month probation terms. During the first term, the district court revoked both probations and ordered Hilton to serve the underlying prison sentences. Hilton appealed, claiming that the second probation term had not commenced when she violated the terms of the first probation term and the district court erred in sending her to prison on the second case. Hilton completed serving her prison terms before the case could be heard on appeal, and the Court of Appeals dismissed the appeal as moot. 295 Kan. at 846.

The *Hilton* court reversed and remanded the matter to this court after determining the issue was moot but the exception applied, as it was not clear from the record if the Court of Appeals had analyzed the applicability of an exception to the mootness doctrine. 295 Kan. at 851-52. In determining that the exception applied, the court relied on the fact that "it would have been highly unlikely that anyone in that circumstance could have obtained relief on appeal for any error in the revocation proceedings before the issue became moot" and "the number of recent Court of Appeals cases addressing the mootness issue in th[is] context . . . speaks to the likelihood of repetition of th[e] dilemma." 295 Kan. at 851. Additionally, the court found that the public importance prong was satisfied as it was certainly a matter of public importance that lower courts know the permissible manner in which they may operate in such circumstances. 295 Kan. at 851.

11

This court should retain the present case if it is ultimately shown to be moot, because it presents issues capable of repetition and raises concerns of public importance. As stated above, the district court has a long-standing rule that a parent cannot live with a friend and retain custody of his or her child as the court has no control over anyone with a legal right to occupy the home, meaning the parent and child could be evicted at any time. Based on a 2014 report from the Kansas State Department of Education, the percentage of homeless students in Kansas increased 161% from the 2006-07 to the 2012-13 school years, from 3,569 to 9,330. See Kansas State Department of Education, *The Education of Homeless Children and Youth Program in Kansas*. During this same period of time, the number of homeless children in USD 501—Topeka Public Schools— increased 76%, from 358 to 630 students. These statistics include children living in a number of conditions, including those who were "doubled up" in the homes of friends and family. Of the 630 homeless students in Kansas, 86% were considered "doubled up" by the survey, meaning that the vast majority of homeless children in the state were staying with family or friends, as was A.G. These statistics indicate that A.G.'s living situation was not an isolated occurrence but is common among children in the state. The prevalence of these similar types of living situations makes the matter before us one capable and likely of repetition.

The matter before us also raises issues of public importance, as it is not likely a person in the position of A.G. or his parents could obtain judicial relief before the issue becomes moot and it is likely necessary for an appellate court to direct the district courts as to the permissible manners in which they may operate under such circumstances. Here, as in *In re A.E.S.* and *Hilton*, it is not likely that an individual in the position of A.G. or his parents could obtain judicial relief before the issue becomes moot. The order of temporary custody was entered because neither of A.G.'s parents had a place to stay where they had a legal right to be. As the order of temporary custody in the present case was entered in July 2015, it is highly probable that either parent has obtained their own housing and has regained custody of A.G. Thus, it is likely that a parent in a similar

situation will obtain their own housing and regain custody before the matter reaches us but only after the parent has been denied custody for some period of time due to the district court's bright-line rule. Additionally, although K.S.A. 2015 Supp. 38-2273(a) specifically allows for appeals from a temporary order, there is no provision for an expedited appeal or stay of further CINC proceedings. Essentially, due to the rule adopted by the district court and the time it takes an appeal to reach this court, it is likely the issue would be resolved and become moot before the parties could ever obtain relief from the temporary custody order. In effect, without applying an exception to the mootness doctrine, it is not likely this court could provide relief to a party injured by an error in a temporary custody order.

Similar to *Hilton*, this case presents an issue likely to be before the district courts again and it is a matter of public importance that such courts know the permissible manner in which they may handle such circumstances. See 295 Kan. at 851. As a matter of public importance it was necessary for the *Hilton* court to instruct the district courts on the permissible manner in which to structure probation agreements given certain circumstances. 295 Kan. at 851. Here, we should retain this case—as a matter of public importance—to instruct the district court as to the proper manner for determining whether agencies have made reasonable efforts to maintain the family and in determining if an emergency exists, requiring immediate placement with DCF, because the child is likely to sustain harm if not removed from the home. As explained above, the district court's long-standing policy—finding an emergency situation exists where neither parent has a legal right to occupy his or her current home—prevents the district court from making the statutorily required findings necessary to place a minor into temporary state custody.

In conclusion, we will retain this case if it has become moot, as it presents an issue capable of repetition and raises concerns of public importance.

Reversed and remanded.

13