172 P.3d 66 (2007)
In the Interest of A.F., J.F., and S.F., Children Under the Age of 18 Years.
No. 98,329.
Court of Appeals of Kansas.
December 7, 2007.
*68 Mark J. Noah, of Noah Law Office, P.A., of Beloit, for appellants adoptive parents.
Jennifer R. O'Hare, county attorney, for appellee.
James M. Johnson, of Frasier & Johnson, LLC, guardian ad litem.
Before CAPLINGER, P.J., ELLIOTT and LEBEN, JJ.
LEBEN, J.
Joe and Debra F. appeal the adjudication of their children as children in need of care. The district court concluded that Debra had committed physical abuse against J.F. and that J.F.'s siblings, A.F. and S.F., were likewise children in need of care under K.S.A. 2005 Supp. 38-1502(a)(11), which authorizes protection for children residing with another child who is physically abused. On appeal, Joe and Debra claim that there was insufficient evidence to find abuse and that the statute is unconstitutionally vague. But our review of the records reveals substantial evidence in support of the district court's conclusion that J.F. sustained bruising all around his left ear from Debra's striking him there with a 1-inch-thick wooden paddle. And we do not believe that the statute is so vague that a citizen would be unaware that you may not strike a child on the head with such a paddle.
Substantial Evidence Supports the District Court's Finding of Physical Abuse
We review the district court's factual findings to see whether they are supported by substantial competent evidence. In performing this review, we view the evidence in the light most favorable to the prevailing party. Although the State had the burden below to prove its case by clear and convincing evidence, that standard does not affect our scope of review on appeal. In re J.J.G., 32 Kan.App.2d 448, 454, 83 P.3d 1264 (2004).
Although Debra never admitted striking J.F. on the ear with her paddle, she did admit to investigators that she had struck J.F. three or four times with the paddle the night before his school reported the abuse that spawned the child-in-need-of-care proceeding. Her admission came after initial denials of even spanking J.F. that night. After she admitted spanking J.F., Debra still denied hitting J.F. on the head but told the sheriff that "anything's possible" when pressed about whether she might have struck J.F. on the head with the paddle. J.F. had purplish to red bruising on and around his left ear, which was also swollen; he also had bruising on his lower back and on his buttocks.
Debra said she spanked J.F. that evening because he had taken too long in the bathtub and was generally being defiant, a habit that was becoming more frequent. At the time this occurred, J.F. was 8 years old and in the second grade. A.F., a fourth-grader, was 9, and S.F., a kindergartner, was 5. All three of the children have special needs, and they had been adopted by Joe and Debra after the children had been removed from their biological parents because of abuse and neglect.
Debra's view of the facts on appeal ignores our standard of review, under which we must accept the factual findings of the district court that are supported by substantial evidence, even when there is contrary testimony. For example, Debra contends that she and Joe never spanked the children when angry based on her testimony at the adjudication hearing. This is contrary to statements Debra made to investigators about her state of mind on the night J.F. was struck. As to the injury to J.F.'s ear, Debra notes that she denied having hit him there and cites some evidence that the bruising to the ear appeared to be more recent than the bruising to J.F.'s bottom. She further cites her own testimony where she speculated that J.F.'s ear might have been hurt while playing with A.F. right before going to school. Again, under our standard of review, this does not undermine the factual finding of the district court. Debra admitted to striking J.F. several times with the paddle, even though she had denied it initially. The district court had the opportunity to evaluate the credibility of her denial of striking J.F. on the ear, and the district court also may well have concluded that her "anything's possible" remark was a tacit admission. Clearly, Debra inflicted substantial physical punishment *69 on J.F. the night before his school reported the abuse. Substantial evidence supports the conclusion that blows struck by Debra caused all of the bruising observed at the local hospital, including to the ear.
There was no dispute in the evidence that A.F. and S.F. were living in the same household as J.F. Thus, they would fit within the statutory provision that accords child-in-need-of-care status to children residing in the same home as another child who is abused.
Joe and Debra's citation to T.G. v. Department of Children and Families, 927 So.2d 104 (Fla.App.2006), is not persuasive support for their argument that the evidence of their abuse is insufficient. In T.G., the trial court found one child had been physically abused and removed both that child and others residing in the home. The Florida Court of Appeals reversed the finding of physical abuse, holding that evidence of a single, insignificant bruise that arose from corporal punishment did not constitute physical abuse under the Florida statute. 927 So.2d at 106. Because removal of the other children rested upon the finding of abuse against one child, the appellate court reversed with respect to all of the children. 927 So.2d at 108. T.G. is readily distinguishable from our case because the injuries to J.F. did not consist of a single bruise, and there were no blows to the head with a blunt instrument in the T.G. case.
We do not find Joe and Debra's citation to cases allowing parental discipline when interpreting the Kansas Protection from Abuse Act, K.S.A. 60-3101 et seq., persuasive here, either. They cite to Barnett v. Barnett, 24 Kan.App.2d 342, 945 P.2d 870 (1997), and Paida v. Leach, 260 Kan. 292, 917 P.2d 1342 (1996). In Paida, a child received a cut lip from contact with her braces when her father washed her mouth out with soap. Paida suggested that the Protection from Abuse Act was "not intended to dictate acceptable parental discipline" and determined that the civil relief available under that statute should only be available against a parent when more than "a minor or inconsequential injury" has been caused to the child. 260 Kan. at 300-01, 917 P.2d 1342. Barnett held, based on Paida and the statutory language, that no relief was available under the Protection from Abuse Act when a father used a switch to strike his 13-year-old son, causing welts. 24 Kan.App.2d at 344, 348, 350-51, 945 P.2d 870. While there was some evidence in Barnett of a red area around the eye that might develop into a bruise, the appellate court emphasized that the boy had testified he recalled only being hit hard once and that he was hit on the back. 24 Kan.App.2d at 348, 351, 945 P.2d 870. Neither Paida nor Barnett involved as serious an injury or potential injury as took place when Debra struck J.F. And Paida and Barnett interpret a different statute, the Kansas Protection from Abuse Act, with the conduct at issue in those cases straying far from the primary intended purpose of that statute. Those cases are simply not very helpful for interpreting the Kansas Code for Care of Children.
The Kansas Statute Providing That a Child Is a Child in Need of Care If Physically Abused Provides Sufficient Guidance to Meet Constitutional Standards.
Joe and Debra's challenge to the constitutionality of the statute presents a legal question over which we have unlimited review, which means that we determine the legal issue independently. State v. Whitesell, 270 Kan. 259, 268, 13 P.3d 887 (2000).
A child is a child in need of care if the child "has been physically, mentally or emotionally abused or neglected or sexually abused." K.S.A.2005 Supp. 38-1502(a)(3). At the time of the abuse against J.F., physical, mental, or emotional abuse was defined in K.S.A.2005 Supp. 38-1502(b) as "the infliction of physical, mental or emotional injury or the causing of a deterioration of a child and may include, but shall not be limited to, maltreatment or exploiting a child to the extent that the child's health or emotional well-being is endangered." Though not applicable here, since the abuse to J.F. occurred on October 17, 2006, the Revised Kansas Code for Care of Children, which took effect on January 1, 2007, has provisions mirroring the ones at issue in our case at K.S.A.2006 Supp. 38-2202(d)(3), 38-2202(d)(11), and 38-2202(x).
Courts apply a two-part test to determine whether a statute is unconstitutionally *70 vague. We first look at whether the statute gives sufficient warning of the prohibited conduct under common understanding. We then consider whether the statute adequately guards against arbitrary enforcement. In re Comfort, 284 Kan. 183, 199, 159 P.3d 1011 (2007).
The Kansas Supreme Court addressed a similar issue to the one now before us in In re Brooks, 228 Kan. 541, 618 P.2d 814 (1980). In that case, the court concluded that the provision of the statute then in effect for terminating parental rights under which a parent found "unfit" to have the custody of a "deprived child" (the predecessor term for today's "child in need of care") gave sufficient guidance to satisfy constitutional standards. 228 Kan. at 551, 618 P.2d 814. Parental fitness seems to us to be an even more generic and malleable concept than that of physical abuse, but Brooks upheld the constitutionality of a parental-fitness standard.
The court in Brooks noted that the standards for vagueness are tighter with respect to criminal statutes than with respect to statutes regulating business. 228 Kan. at 544, 618 P.2d 814. Thus, the same statutory standard that might give sufficient guidance to constitutionally regulate business conduct might be impermissibly vague to allow criminal penalties for noncompliance. The court in Brooks held that the vagueness standard for a statute involving termination of parental rights would fit in between the tighter standard for criminal statutes and the looser standard for business-regulation statutes. The court in Brooks also noted that prior case law may provide a settled meaning for a statutory phrase, thus providing sufficient certainty as to the statute's meaning to guide citizen conduct. 228 Kan. at 544, 618 P.2d 814.
We believe that the statute's term "physically abused" uses commonly understood words, at least as applied to the facts of this case. There may be cases at the margin in which a closer question would be presented. But striking a child on the ear with a wooden paddle is not a case at that margin, and "[a] statute is not to be struck down as vague only because marginal cases could be put where doubts might arise." Brooks, 228 Kan. 541, Syl. ¶ 8, 618 P.2d 814.
When the words of the statute are considered in combination with the procedures used to determine whether physical abuse has occurred, there is even less cause for concern about vagueness. Procedural safeguards and a heightened burden of proof may provide protection against the potential uncertainty of statutory language in actual practice. See In re Detention of Keeney, ___ Wash.App. ____, 169 P.3d 852, 855 (2007). The statute at issue here has both. First, the Kansas statutory scheme for children in need of care has a number of safeguards against arbitrary enforcement:
 Parents have a right to counsel, and counsel will be provided at state expense for those who cannot afford to hire one. K.S.A. 38-1505(b) (replaced effective January 1, 2007, by K.S.A.2006 Supp. 38-2205[b]).
 Proceedings to adjudicate a child in need of care must begin with a detailed petition that provides "the specific facts relied upon" to support the allegations. K.S.A. 38-1531 (replaced by K.S.A.2006 Supp. 38-2234).
 The child may be taken into protective custody on a showing of probable cause, but a court hearing must be held within 72 hours, excluding weekends. K.S.A. 38-1543 (replaced by K.S.A.2006 Supp. 38-2243).
 Formal discovery may be provided by the court when it would help to expedite the proceedings. K.S.A. 38-1545 (replaced by K.S.A.2006 Supp. 38-2245).
 A guardian ad litem, who has an independent duty to investigate the case, must be appointed to represent the child. K.S.A. 38-1505(a) (replaced by K.S.A. 2006 Supp. 38-2205[a]).
Second, a child is not adjudicated in need of care until evidence is presented at a court hearing, where the burden is on the State to prove its case by clear and convincing evidence. K.S.A. 38-1555 (replaced by K.S.A. 2006 Supp. 38-2250). And the parents have an opportunity, as Joe and Debra have done here, to challenge the constitutionality of the statute on vagueness grounds. If the statute *71 does not give sufficient guidance to give fair notice that the conduct at issue in some future case was prohibited, a court could then hold the statute unconstitutionally vague as actually applied on the facts of that case.
We note that a previous, unpublished case upheld a predecessor statute against the challenge brought here, namely that the statutory phrase of "physical, mental or emotional abuse or neglect" was too broad. In re Interest of Ra. B., No. 64,039, 793 P.2d 767, unpublished opinion filed June 1, 1990 (Kansas Court of Appeals), aff'd on other grounds, 804 P.2d 1008, unpublished opinion filed January 18, 1991 (Kansas Supreme Court). The court there held that the statute used words of commonly understood meaning and that it provided sufficient guidance to prevent arbitrary enforcement. Although unpublished opinions, like In re Ra. B., are not binding as precedents, we have noted In re Ra.B. because a previous panel of the Court of Appeals also found that the statute used commonly understood words and provided sufficient safeguards against arbitrary enforcement.
The cases cited by Joe and Debra on this issue are not persuasive. They rely primarily on State v. Meinert, 225 Kan. 816, 594 P.2d 232 (1979). Meinert held that a criminal child-endangerment statute was too vague because its standard of "unjustifiable physical pain" was incapable of fair understanding and application to the parental discipline of children. 225 Kan. at 819, 594 P.2d 232. That was a criminal case, however, in which the most rigorous void-for-vagueness standard is applied.

Conclusion
There is substantial evidence to support the district court's finding of serious physical abuse of J.F., and that finding justified the designation of all three children as children in need of care. Further, at least as applied in this case, the statutory standard for physical abuse was sufficiently clear that it satisfied the applicable standard for constitutionality.
The judgment of the district court is affirmed.