NOT DESIGNATED FOR PUBLICATION

Nos. 116,185
116,187
116,188

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In The Interest of S.D., J.D., AND Z.D.,
Minor Children Under the Age of Eighteen.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed May 12, 2017.
Reversed and remanded with directions.

*Juanita M. Carlson*, of Carlson Law Office, of Lawrence, for appellant.

*Kate Duncan Butler*, assistant district attorney, and *Charles E. Branson*, district attorney, for
appellee.

Before BRUNS, P.J., HILL and SCHROEDER, JJ.

*Per Curiam*:  American society has always considered the parent-child
relationship as foundational. Indeed, it is so fundamental that to permanently take
children from their mother is one of the most onerous actions a state can take against one
of its citizens. Such an action should never be done lightly or for trivial reasons.
Scrupulous attention to due process is essential for a court contemplating the severance of
the parent-child bonds or else there can be no confidence that a just result was obtained
instead of the perception that steps were taken out of expediency.

Here, when 3 days were scheduled for a severance hearing and the mother of the
children failed to attend on the second day, the court then abruptly closed the evidence.

1

The judge gave no reasons for closing the evidence at that point and made no analysis. The record indicates that the judge even failed to rule on the objection lodged by Mother's counsel to closing the evidence at this point. Clearly, the court's action denied Mother the opportunity to testify on the third day of the trial.

While it is true that Mother appeared at the first day of the trial and testified when called by other parties, she was not given the opportunity to testify *in her own right*. We hold due process requires an opportunity for a parent to testify in his or her defense, and for the court to consider this testimony before deciding to take the children away forever. We reverse and remand so that Mother can testify in her own behalf. Due process demands no less.

*Mother has a history of court involvement.*

In 2014, the State filed a child in need of care petition concerning three children: S.D., a male born in 2008; J.D., a female born in 2012; and Z.D., a male born in 2013. A fourth child, A.D., is mentioned throughout the record, but she is not included in this case. Father's parental rights were also severed, but he is not a party in this appeal.

Mother and Father did not contest the court's initial child in need of care determination. After the court decided the children were children in need of care, it set reintegration of the family as the ultimate goal. Then, in September 2015, the State sought termination of their parental rights. This request for termination of Mother's parental rights was based on her felony conviction and subsequent imprisonment.

Mother was convicted of forgery in June 2013 and was sentenced to an 18-month prison sentence and placed on probation. The court later revoked Mother's probation in March 2014, and she was sent to prison. While Mother was in prison, she worked on case plan tasks and had visits with her children. Mother was released from prison in December

2015. Mother asked to stay the proceedings, arguing the statutory provision allowing for termination of parental rights based upon a felony conviction and imprisonment should not apply because she had been released from prison. The district court denied the motion at the termination hearing.

The termination hearing was scheduled for March 29, 2016, through March 31, 2016—3 days of trial. Mother was present on the first day of trial and testified as a witness for the State. Mother's attorney cross-examined her. Mother's testimony concerned her conviction, her plans to avoid relapsing, her plans for work, and visits with her children.

The only other testimony heard on this day was from Father and one of the case managers. Highly summarized, the case manager testified that Mother communicated with Kaw Valley Center, participated in visits, and completed some of her case plan tasks. The case manager expressed concerns about the content of communications Mother made to A.D. (the child that was not a subject of this petition) while visits with the children were occurring in prison. The conversations included talking about drug houses and moving the children out of the state when they were returned. The case manager opined Mother was doing everything that was expected of her while she was incarcerated; however, postincarceration stability was needed before reintegration was possible. The case manager believed it was in the children's best interests to terminate parental rights because they had been out of Mother's custody for over a year and the permanency of termination would be better than the children being in limbo for an unknown period.

On the second day of trial, Mother was not present. A caseworker testified that Mother had obtained appropriate housing but failed to provide sufficient documentation of her employment. Mother displayed positive parenting skills, but the caseworker had some concerns with the children not seeing Mother as an authority figure. This

caseworker testified about Mother's drug use and urinalysis screenings. The worker concluded that Mother showed positive steps in her parenting, but the worker was concerned about Mother being able to stay sober and provide stability. A third caseworker testified about concerns with Mother's parenting abilities. The Father testified on his own behalf.

After the State and Father rested their cases, Mother had informed her attorney by e-mail that she wanted to testify and would appear the next morning—the third day of trial. Mother's attorney told the court that Mother's transportation had fallen through and requested that the court allow Mother to testify on the following day. Mother had no other witnesses subpoenaed, and the district court decided to conclude the taking of evidence and proceeded to argument. Mother's attorney objected. Without ruling, the judge simply said, "Thank you."

The court terminated both parents' rights. It based its decision on Mother's conviction and imprisonment as well as her failed urinalysis screenings, lack of job stability, and a failure of reasonable efforts by the State to rehabilitate the family.

In this appeal, Mother contends that K.S.A. 2016 Supp. 38-2269(b)(5) is void for vagueness, the State failed to present sufficient evidence to support its claim of unfitness, and makes a due process complaint for denying her an opportunity to present her case. We will deal with the question of the constitutionality of the statute and the due process violation. We will not address the issue concerning the sufficiency of the evidence because we are reversing the holding.

*The statute is not too vague.*

Mother challenges the constitutionality of K.S.A. 2016 Supp. 38-2269(b)(5). This statute requires that in a proceeding for termination of parental rights, the district court

4

must consider "a conviction for a felony and imprisonment" when determining unfitness to be a parent. Mother alleges this language is unconstitutionally vague.

We note that this issue was not raised to the district court. If K.S.A. 2016 Supp. 38-2269(b)(5) is found to be unconstitutional, it would be fundamentally unfair to base the termination of parental rights on this statute. Thus, the issue may be raised for the first time on appeal. See *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967).

Some general points about constitutional review of statutes is useful at this point. Whether a statute is constitutional is a question of law over which we exercise unlimited review. *City of Lincoln Center v. Farmway Co-op, Inc.*, 298 Kan. 540, 544, 316 P.3d 707 (2013). We presume statutes to be constitutional, and the party challenging the constitutionality bears the burden of proving them unconstitutional. If there is a reasonable interpretation of a statute that satisfies the constitutional requirement, the statute should be upheld. *City of Wichita v. Hackett*, 275 Kan. 848, 853, 69 P.3d 621 (2003).

Vague statutes are problematic. Over the years, courts have created a set of rules concerning vagueness. A statute is unconstitutionally vague if the language of the statute does not adequately warn what conduct is being regulated. *Steffes v. City of Lawrence*, 284 Kan. 380, 389, 160 P.3d 843 (2007). Two considerations about a statute arise. A statute can be unconstitutionally vague if either:

- a person of ordinary intelligence would not understand what conduct is prohibited under the statute; or
- the language of the statute authorizes or encourages arbitrary or discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000).

5

A deficiency under either test means the statute is unconstitutionally vague.

Whether a statute is vague depends on what type of conduct is being regulated. More specificity is required for criminal statutes, and less specificity is required for business regulations. The specificity required for statutes governing the termination of parental rights falls somewhere between criminal statutes and business regulations. *In re Brooks*, 228 Kan. 541, 544, 618 P.2d 814 (1980).

We turn to the first test, which asks whether an ordinary person would understand what conduct is prohibited. *Hill*, 530 U.S. at 732. A statute with language that a person of ordinary intelligence would have to guess at the meaning of the statute is unconstitutionally vague. On the other hand, a statute is not unconstitutionally vague if it uses words commonly used, previously judicially defined, or which have a settled meaning in law. *Farmway*, 298 Kan. at 545. We look now at the argument Mother raises on this point.

When making a determination of the unfitness of a parent, the statute calls for a court to consider "conviction of a felony and imprisonment." K.S.A. 2016 Supp. 38-2269(b)(5). Mother does not contend that the phrase "a conviction of a felony" is vague. Instead, she argues that the word "imprisonment" is vague. Statutory wording must be considered in light of the entire code and not in isolation. We know that in Kansas criminal law, "imprisonment" is defined in K.S.A. 2016 Supp. 21-6803(m). It is settled law. The term means "imprisonment in a facility operated by the Kansas department of corrections." More generally, imprisonment is commonly understood to mean confinement. See *State v. Huff*, 277 Kan. 195, 203-05, 83 P.3d 206 (2004).

Words are used in clusters. The conjunction "and" in the phrase, "conviction of a felony and imprisonment" implies a necessary correlation between "conviction of a

6

felony" and the word "imprisonment." This correlation between a conviction of a felony and imprisonment is supported by the definition of felony: "A felony is a crime punishable by death or by imprisonment in any state correctional institution or a crime which is defined as a felony by law." K.S.A. 2016 Supp. 21-5102(a). To a person of ordinary intelligence, the phrase, "conviction of a felony and imprisonment" means a person is convicted for an offense that constitutes a felony and is confined in prison for that offense. After all, a person of ordinary intelligence would understand that you cannot supervise children when you are locked behind prison bars. Under that statute, then, the court shall consider as evidence of unfitness a parent's conviction and imprisonment.

Mother gives us a series of hypotheticals in an attempt to demonstrate some ambiguity in the language that leaves an ordinary person guessing at the meaning. We are not persuaded. After all, a statute is not to be struck down as vague only because marginal cases could be put forward that might cause doubts to arise. See *In re Brooks*, 228 Kan. 541, Syl. ¶ 8, 618 P.2d 814 (1980).

Because there is a reasonable interpretation of the language which would not leave an ordinary person guessing at the meaning of the statute, under the first test, we find the statute valid. See *Hackett*, 275 Kan. at 853.

The second test that we must examine is whether the statute protects against arbitrary enforcement. Mother lays out four factors to consider which are supposedly from *In re A.F.*, 13 Kan. App. 2d 232, 767 P.2d 846 (1989). The case Mother provides a citation for does not involve vagueness in any way. A case by the same name does analyze the arbitrary enforcement test—*In re A.F.*, 38 Kan. App. 2d 773, 172 P.3d 66 (2007), *disapproved on other grounds by In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008).

7

At any rate, Mother's reliance on *In re A.F.* is misplaced. That panel stated, "[p]rocedural safeguards and a heightened burden of proof may provide protection against the potential uncertainty of statutory language in actual practice. [Citation omitted.]" The panel analyzed various safeguards presented by the statutory scheme for children in need of care. 38 Kan. App. 2d at 778-79. These procedural safeguards are not the baseline for determining whether there is potential for arbitrary enforcement; rather, the language of the statute itself is the baseline. See *Hill*, 530 U.S. at 732. Because the party asserting a statute is unconstitutional bears the burden of proving the unconstitutionality and Mother does not address how the language of K.S.A. 2016 Supp. 38-2269 allows arbitrary or discriminatory enforcement, her challenge under this prong fails. See *Hackett*, 275 Kan. at 853.

In our view, the language of K.S.A. 2016 Supp. 38-2269(b) prevents arbitrary or discriminatory enforcement. When considering the possibility of arbitrary enforcement, we look to the entire Act, not an isolated subsection. Subsection (a) provides that a district court may terminate a parent's right if it finds by clear and convincing evidence that a parent is unfit by conduct or condition that renders the parent unable to care for the children and the conduct or condition is not likely to change in the foreseeable future. Subsection (b) provides a nonexclusive list of factors the district court must consider in the fitness determination. While any factor on its own may be a reason for termination, the existence of a statutory factor does not explicitly require a parent's right to be terminated. K.S.A. 2016 Supp. 38-2269(f). By using the word "shall" in subsection (b), the legislature made the consideration of those factors mandatory if they are present. But whether that factor is grounds for terminating parental rights is ultimately controlled by the test in K.S.A. 2016 Supp. 38-2269(a). Namely, whether the "conduct or condition renders the parent unable to properly care for a child and the conduct or condition is unlikely to change in the foreseeable future."

Because considerations of these factors are made mandatory by the legislature, there are no grounds for arbitrary or discriminatory enforcement. Any time a factual scenario is presented to the district court where a person has been convicted of a felony and has been imprisoned, the court must consider that in its analysis of whether the parent is unfit to care for his or her children and whether the unfitness will continue for the foreseeable future. This mandatory requirement of the district court to consider the factors is the opposite of arbitrary enforcement. Additionally, under the analysis found in *In re A.F.*, the fact that unfitness must be proved by clear and convincing evidence protects against arbitrary enforcement. See 38 Kan. App. 2d at 778-79. Unfitness is not determined until a court hearing has taken place, and the clear and convincing evidence standard limits the possibility that parental rights would be arbitrarily terminated.

Clearly, K.S.A. 2016 Supp. 38-2269(b)(5) passes constitutional muster. An ordinary person would understand what conduct is regulated by the phrase, "conviction of a felony and imprisonment." The conjunctive use of the word "and" in the statute implies a correlation between the felony conviction and the imprisonment. The common understanding of the phrase, "conviction of a felony and imprisonment" means being confined for the conviction of a felony; thus, the statute adequately states what conduct is covered by the statute. Mother has not raised an argument concerning how the specific language of K.S.A. 2016 Supp. 38-2269(b)(5) leads to arbitrary or discriminatory enforcement and has not met the burden of proving the statute is unconstitutional. Additionally, the language of the statute prevents arbitrary enforcement. All convictions of felonies that result in imprisonment must be considered by the courts in termination proceedings; mandatory consideration is the opposite of arbitrary enforcement. Thus, the statute is not unconstitutionally vague, and Mother's conviction may be considered by the district court on remand.

9

*Mother did not receive due process.*

Mother argues that when the district court closed evidence on the second day of trial when she was not present and did not have an opportunity to present her case-in-chief, her due process rights were violated. We agree.

We note that this argument was not directly raised in the district court. While the general rule is that issues cannot be raised for the first time on appeal, there is an exception to this rule when the issue implicates a fundamental right. Those may be raised for the first time on appeal. See *Pierce*, 200 Kan. at 80-81. Mother has argued that her denial of due process argument implicates her fundamental right to parent her child and should be addressed for the first time on appeal. The State concedes this argument may be raised for the first time on appeal.

Obviously, we must answer the question, what process is due in this case? The right to due process is traditionally stated as the right to be heard at a meaningful time in a meaningful manner. Due process violations exist when a claimant is able to establish that the claimant was denied a specific procedural protection. *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). The specific procedural protection Mother claims, although not directly stated, is essentially a continuation in order for Mother to testify on the third day of trial.

Due process is not a fixed concept, but rather what procedures are necessary depends on the specific circumstances. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001). Also, due process is not a static concept. Its requirements vary to assure the basic fairness of each particular action according to the circumstances. See *In re J.L.D.*, 14 Kan. App. 2d 487, 490, 794 P.2d 319 (1990), *disapproved on other grounds by In re Adoption of B.J.M*, 42 Kan. App. 2d 77, 209 P.3d 200 (2009).

10

For a due process claim to succeed, we must determine if a fundamental liberty or property interest is involved. If so, then we must determine the nature and extent of the process due. *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409, 49 P.3d 1274 (2002).

Clearly, a fundamental liberty interest is implicated in this case. The trial concerned Mother's right to keep her children. Our caselaw makes this abundantly clear. A parent has a fundamental liberty interest in making decisions regarding the care, custody, and control of his or her children. *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Kansas courts have held that a parent is entitled to due process before the parent may be deprived of the right of custody, care, and control of his or her child. See, *e.g.*, *Sheppard v. Sheppard*, 230 Kan. 146, 152-54, 630 P.2d 1121 (1981).

Next, we must decide the nature and extent of process that is due. In making this determination, the court utilizes the three-factor balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *In re J.D.C.*, 284 Kan. at 166-67. The test balances the interests of the individual, the State, and principles of good governance:

(1) the individual interest at stake;

(2) the risk of erroneous deprivation of the interest and the probable value, if any, of additional or substitute procedural safeguards; and

(3) the State's interest in the procedure used, including the fiscal and administrative burden additional or substitute procedure would incur. *Eldridge*, 424 U.S. at 335.

When we apply this test to the procedure adopted by the district court—closing evidence on the second day of trial without affording Mother an opportunity to testify on

11

the third day of trial—the deprivation of Mother's due process rights becomes manifest. We look at the three parts of the test.

First, we must assess the individual's interest at issue in the case. We can think of no more important interest Mother had at stake here than her rights to her children. The whole point of the trial was to determine if Mother's parental rights should be terminated. The right of a parent to their child has long been held to be a fundamental liberty interest protected by the United States Constitution. *Troxel*, 530 U.S. 57 at 65; see *In re J.D.C.*, 284 Kan. at 166. Because the primary issue at the trial involved Mother's right to parent her children, a scrupulous observance of due process was called for. See *In re Adoption of B.J.M.*, 42 Kan. App. 2d 77, 84, 209 P.3d 200 (2009).

The second *Eldridge* factor involves the risk of erroneous deprivation of the right. *Eldridge*, 424 U.S. at 335. Here, by closing evidence without Mother being able to present her evidence, there is a high risk of erroneous deprivation of her right. We find the holding in *In re Adoption of B.J.M.*, 42 Kan. App. 2d at 85-86, instructive. In that case, the panel found there was a high risk that a father's parental interests were erroneously deprived when he was not allowed to be physically present at the adoption proceedings. Father was absent because he was in prison at the time of the hearing. The district court did not order him to be transported from prison to the court for the hearing.

Specifically, the panel found that father was wholly deprived of the right to testify by his absence and was not given the opportunity to provide testimony in a substitute manner, such as through a deposition or a sworn affidavit. 42 Kan. App. 2d at 85. Here, Mother was put in a similar situation by the court when it closed evidence on the second day of trial. While Mother did testify at trial, she testified as a witness for the State. Mother was not able to present her case-in-chief, which would have allowed her to present evidence. In presenting her evidence, it is entirely possible that Mother could have shown she was not an unfit parent, challenged the State's evidence of her unfitness,

12

shown that she could change any unfitness to parent in the foreseeable future, or that terminating her parental rights was not in the best interests of her children. See K.S.A. 2016 Supp. 38-2269; *In re Adoption of B.J.M.,* 42 Kan. App. 2d at 85-86. Because Mother was not afforded the opportunity to testify in support of her case-in-chief, or present rebuttal testimony concerning the State's evidence, there is a higher risk of an erroneous deprivation of her right to the care, custody, and control of her children. See 42 Kan. App. 2d at 85-86.

Obviously, a procedural safeguard did exist that would have made any erroneous deprivation of Mother's right to parent her children much less likely. See *Eldridge*, 434 U.S. at 335. Mother, through her attorney, requested that the district court allow Mother to testify on the morning of the third day of trial. At the time Mother's attorney made this request, the State and Father had presented their evidence and rested their cases. The district court originally scheduled the trial for 3 days. Had the court taken a recess until the morning of the third day, Mother would have been allowed to testify and any concerns of erroneous deprivation of Mother's right would be significantly reduced due to her being allowed to present her case. Thus, this simple procedure would have substantially limited the possibility of an erroneous deprivation of Mother's rights.

What compounds this situation is the total lack of comment or analysis by the trial judge. We can find no reasons for the court's action and no demonstration in the record that the court understood what was at stake for Mother at this trial.

The third *Eldridge* factor is the State's interest in the procedure used. 434 U.S. at 335. In this factor, the administrative and fiscal burdens of additional or substitute procedures are considered. *Winston*, 274 Kan. at 409-10. Because this is a case involving the care of children, the State has a heightened interest in resolving the case quickly and determining a course of action, which will lead to a stable home for the children. See *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

13

It is a long established rule that timing in these cases should be considered in "child time" rather than "adult time." *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2001).

The only procedural request in this case was simply to allow Mother to testify on the third day of trial. This procedure would not have added a single day to the trial if the court had not closed the evidence. One day is not too large a burden, even if it is considered in "child time." Because a third day of trial was already scheduled, we see no additional fiscal and administrative burden to the State and the court if Mother had been allowed to testify on the third day.

The State argues that because there is no showing that Mother would have been present on the third day, the administrative and fiscal burdens of allowing Mother to testify on the third day are unknown. This argument is not persuasive. Any speculation on whether Mother would appear on the third day was created in part by the district court concluding the trial on the second day. If the trial continued to the third day and then Mother did not appear to testify, then additional procedures taken in response to her failure to appear might impose fiscal and administrative burdens which would lead to a finding that due process was afforded to Mother. But making such a finding now requires us to speculate with no supporting evidence in the record. The State's concern on appeal is unjustified because Mother was not even given the opportunity to fail to appear on the third day.

The State argues due process is satisfied in this case because Mother was notified of the hearing and was given the opportunity appear, citing *In re K.E.*, 294 Kan. 17, 272 P.3d 28 (2012), as support. In that case, the father of a child was given notice of the termination hearing and an opportunity to appear. He requested to testify by telephone instead of in person. The father was in Georgia on the day of the hearing serving a term of lifetime parole. The district court denied his request. The Kansas Supreme Court found

14

the district court did not deny the father due process in denying this request. 294 Kan. at 26. Because the father had been notified of the hearing he had an opportunity to be heard in a meaningful manner and his absence alone did not show "'good cause in compelling circumstances'" in order to satisfy a statute which allowed for out-of-court testimony. 294 Kan. at 25-26. The father failed to meet his burden; thus, the district court did not deny him due process.

The analogy with this case breaks down, however. No one disputes that Mother received proper notice of the hearing, and the State argues this notice provided the opportunity to be heard. See 294 Kan. at 25-26. We emphasize that Mother had notice of a 3-day trial, not a 2-day trial. *In re K.E.* is distinguishable from the present case. The district court in *In re K.E.* relied upon statutory factors to consider whether father could testify by telephone. 294 Kan. at 22-26. *Based upon those factors, the district court ruled that the father had not met his burden to testify while out of court.* Our Supreme Court, reviewing the analysis made by the district court, found the district court did not err in denying the father's request. 294 Kan. at 25-26.

Here, the district court summarily denied Mother's request to testify on the third day of trial. The due process analysis in *In re K.E.* focused on the father's burden under the statute to prove out-of-court testimony should be allowed. 294 Kan. at 21-26. Here, Mother made no request for out-of-court testimony, and the court made no specific findings concerning out-of-court testimony. Rather, Mother's request was summarily denied without argument. The State's simplified view of *In re K.E.* is not applicable to the factual situation here.

Moving on, we note that both sides argue the applicability of a recent case from New Jersey—*New Jersey Division of Child Protection and Permanency v. K.S.*, 445 N.J. Super. 384, 138 A.3d 566 (2016). While it is not precedent binding on this court, it does present similar factual circumstances. In *K.S.,* the mother and her attorney were not

15

present at the termination hearing. Ten days after the trial testimony, the mother requested to have the court reopen the case. The court denied this request. Through applying the *Eldridge* test, the *K.S.* court determined the decision not to reopen evidence was an abuse of discretion. 445 N.J. Super. at 390-94.

While there are factual similarities between these two cases, *K.S.* is not persuasive for our analysis. The New Jersey court recognized that under New Jersey law, "a complete record is constitutionally necessary and a parent must be liberally afforded the right to be heard before executing the severance of the parent-child relationship." 445 N.J. Super. at 392. This statement of law is much more expansive than any statement of law concerning requirements of due process for termination hearings in Kansas. Kansas courts appear to have a narrower approach than the expansive view taken by the New Jersey court. Therefore, we will not adopt the reasoning of the *K.S.* court in this case.

To sum up, when we weigh the *Eldridge* factors it shows that Mother was not afforded due process. Mother has a fundamental liberty interest in parenting her children; thus, the first factor weighs in favor of a finding that her due process rights were violated. Because Mother was not allowed to present her case-in-chief, there was a higher risk of erroneous deprivation. Additionally by continuing the trial to the third day, which was already scheduled for the trial, the risk of erroneous deprivation could have been severely reduced. The second *Eldridge* factor weighs in favor of finding a violation of due process. The State has an interest in expediently resolving cases involving children in need of care; however, continuing the case to the third day would have presented little fiscal or administrative burden. The third *Eldridge* factor weighs in favor of finding Mother was not afforded due process.

Having come to that conclusion, then we must decide on the appropriate remedy. Constitutional errors are classified in two ways—trial errors and structural errors. A trial error is subject to the constitutional harmless error test under *Chapman v. California*, 386

16

U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Structural errors require an automatic reversal. A trial error occurs in the presentation of the case to the factfinder and is able to be quantitatively assessed in relation to other evidence presented. *State v. Calderon*, 270 Kan. 241, 250, 13 P.3d 871 (2000). Structural errors, on the other hand, are "necessarily unquantifiable and indeterminate." See *Sullivan v. Louisiana*, 508 U.S. 275, 281-82, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). In *In re Adoption of B.J.M.*, this court found a denial of due process was a structural error that required automatic reversal. Because the error involved depriving the father the opportunity to testify and challenge the evidence against him, the prejudice caused by the error was unquantifiable and indeterminate. 42 Kan. App. 2d at 87-88. Here, Mother was deprived of the same ability to present her evidence and challenge the evidence presented against her. The error is structural, and automatic reversal of the district court's holding is required. On remand, the Mother must be afforded the opportunity to present her testimony.

The judgment of the district court terminating Mother's parental rights to her three children is reversed. The case is remanded so Mother will have the opportunity to testify in her own behalf.

17